[No. 1643.]

## STATE OF NEVADA, RESPONDENT, v. ROBERT L. BURNS, APPELLANT.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—REVIEW—RECORD ON APPEAL—EVIDENCE—WITNESSES—COMPETENCY—IDENTIFICATION OF HANDWRITING—MONEY DETAINED FROM PRISONER—RECOVERY—MOTION AGAINST SHERIFF.

1. A motion by the accused for an order directing the sheriff to pay over to him money unlawfully detained, as shown by an affidavit in support of such motion, was properly denied, as such money could be recovered by civil action, and, if the money was taken from him at the time of his arrest, Comp. Laws 1900, secs. 4555–4560, provides for its disposition.

2. An instruction "that a witness false in one part of his testimony is to be distrusted in others" was properly refused, as it omits the element of willfulness.

3. No error can be predicated on a refusal to give an instruction in relation to a subject on which the instructions given were all that the accused had a right to demand.

4. Where there is no testimony of an accomplice, an instruction referring to such testimony is properly refused.

5. Where part of an instruction is correct, and the other part joined thereto is bad, the whole thereof is properly refused.

6. Comp. Laws 1900, sec. 4391, providing that "when any written charge has been presented and given, or refused, the question or questions presented in such charge need not be excepted to, nor embodied in a bill of exceptions," etc., does not apply to a charge given by the court on its own motion; and where the record does not show either that any exception was taken to an instruction, or that it was "presented and given," an objection thereto cannot be considered on appeal.

7. A witness called to identify the handwriting of accused testified that he was employed in a bank as bookkeeper and exchange teller; that he had seen the accused, and had his signature made in his presence, which he produced on a depositor's card, which was introduced in evidence. He then stated that it was a part of his business to study the signatures on such cards taken from depositors. *Held*, that he was properly qualified.

8. Before a witness for the state stated on cross-examination that he did not know what an oath was, he had given much intelligent testimony, and had stated that he did know what an oath was. After making the disqualifying statement, on which it was moved to strike out his testimony, he stated that he knew what perjury was, and gave a fairly correct idea thereof. *Held* sufficient to sustain a ruling against the motion, in view of the fact that after the denial of the motion the witness gave much more testimony of the same character as that previously given.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *B. F. Curler*, Judge.

Robert L. Burns was convicted of robbery. From an order denying a motion for new trial, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Leishman & Hummel*, for Appellant:

I. In the first place, defendant was deprived of his only means of proving an alibi, and therefore a complete defense, by the actions of the sheriff in taking from him the only means he had of securing the attendance of his witnesses, or in taking their depositions, from another state, and we respectfully submit that, were this proceeding to be approved by this court, then there would be no limit upon the invasion of the property rights of a citizen which have been guaranteed by our constitution, both federal and state.

II. In conclusion, we respectfully submit that there is no substantial conflict in the testimony as to the guilt of this defendant; he may have been guilty of a minor offense, but under no circumstances could he have been proven guilty of the crime in the manner and form charged in the indictment,

and, having been prevented by lack of means from making a fair, full and complete defense of an alibi, he surely cannot be held to be guilty when such incapacity was not his fault, but caused by the arbitrary actions of the prosecuting officers.

*W. H. A. Pike*, District Attorney, and *James G. Sweeney*, Attorney-General, for Respondent:

I.   It is an elementary and undisputed principle of both criminal law and procedure, and all the text-writers on criminal law and the authorities so hold, that stolen property found in the possession of the accused will be held, subject to the discretion, order and direction of the trial judge having jurisdiction of the proceeding, who, upon sufficient proof, shall order it returned to the owner thereof at the proper time.

II.   In view of the testimony adduced on this point and the finding of the jury that the defendant was guilty of having robbed Phillips of over $1,200 in coin, it is absurd now to urge this court that there was any abuse of discretion, let alone sufficient abuse of discretion to constitute error.

III.   We submit that, on this point, were this court to do otherwise than affirm the order of the trial judge refusing to turn over to the accused the stolen property found in his possession at the time of his arrest in order that it might have aided him in any way, would not only have been placing a premium on crime, but an altogether unheard-of and false construction of those clauses of our federal and state constitutions pertaining to the rights of individuals and their property.

By the Court, FITZGERALD, J.:

The appellant was tried in the district court in and for the county of Washoe for the crime of robbery. The jury found a verdict of guilty. He made a motion for a new trial. The court denied the motion, and he appeals to this court from the order denying his motion. The grounds of appeal are (1) that the court misdirected the jury in matters of law; (2) that the verdict is contrary to law; and (3) that the verdict is contrary to the evidence.

The assignments of error are numerous. One is the fol-

lowing: The record shows that "this cause came on regularly to be heard * * * on January 15, 1903, and the following proceedings were had: * * * The Court: * * * Are you ready to proceed, gentlemen? Mr. Pike: Ready on the part of the state. Mr. Leishman: We are ready for the defense, but we have an objection to enter before proceeding. (Jury impaneled, indictment read, and opening statement of prosecution made by the district attorney.) The Court: Does the defense wish to make an opening statement at this time? Mr. Leishman: At this time, if it please the court, we do not wish to make an opening statement. * * *"

Counsel for appellant then stated: "We object to further proceeding with the trial of this case upon the grounds that the defendant has been prevented in this case from making a fair and free defense, having been deprived of his property without due process of law, and in violation of section 33 of the constitution of this state, and not in conformity with sections 4555, 4556, 4557, 4558, 4559. and 4560 of the Compiled Statutes of this state, and upon the affidavit and motion heretofore filed."

It appears that on the 2d of January, 1903, an affidavit of the appellant had been sworn to, and we may, perhaps, presume filed, stating: "Robert L. Burns, being first duly sworn, deposes and says: I am the defendant in the above-entitled action. The sheriff of this county holds in his possession and against my will the sum of $159.25 belonging to me, and which I require to make a fair defense. I am unable to pay the costs of a claim and delivery action for the same, and am unable to pay for the expense of taking depositions of witnesses in my behalf, which evidence I could procure before the 15th day of January, 1903, the day for which the trial of said action has been set. I have no friends who are able to pay the aforesaid costs, or to help me in defraying the expenses of my defense. This affidavit is made in support of a motion for an order directed to the said sheriff to pay over to me or to my attorney the aforesaid sum, and the property detained by him as aforesaid. Robert Burns."

The foregoing affidavit was duly entitled in the court and cause, and the venue thereof laid in Washoe county, State of Nevada; and it further appears that on the said 2d day

of January, 1903, a motion was filed, which, after duly stating title of court and cause, says: "Now comes defendant herein, and moves the court for an order, directed to the sheriff of this county and the officers of this court, to pay to the defendant in said cause the sum of $159.25, and other property detained by him belonging to the defendant. Said motion is made upon an affidavit filed of even date hereof, and upon the record, papers and files in said case. David Leishman, Attorney for Defendant."

Admitting for the sake of the argument, but for that purpose only, that on the facts set forth in said affidavit the sheriff of Washoe county did wrongfully and unlawfully withhold from the appellant the money mentioned in said affidavit, and further admitting for the purpose of the argument, but for that purpose only, that the motion of counsel was seasonably and properly called to the attention of the court, we think the court made no error in denying the motion to proceed no further with the case. The State of Nevada has provided a procedure by civil action for the recovery of money and property claimed to be unlawfully withheld, but the trial court did not, as we think, abuse its discretion in denying the motion. If the money in question was at the time of arrest of appellant taken from him by the arresting officers, then sections 4555–4560 of the Compiled Laws of Nevada of 1900 provide for its disposition.

Counsel for appellant requested instruction No. 4, as follows: "You are instructed that a witness false in one part of his testimony is to be distrusted in others." And the court's refusal to give it is assigned as error. This requested instruction does not properly state the law. It omits the element of willfulness in the falsity of the witness. Besides, the court gave the following instruction on this subject, which is all that the appellant had the right to demand: "You are further instructed that if the jury believe from the evidence that any witness has willfully sworn falsely on this trial as to any matter or thing material to the issues in this case, then the jury are at liberty to disregard his entire testimony, except in so far as it has been corroborated by other credible evidence, or by facts or circumstances proved on the trial."

Counsel for appellant requested instruction No. 5, as follows: "You are instructed that the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution." The court refused it, and this refusal is assigned as error. There are two elements in this instruction: (1) The law applicable to the "testimony of an accomplice"; and (2) the law applicable to "oral admissions of a party." That part of the instruction referring to the testimony of an accomplice, we think, was properly refused, because we find nothing in the record showing any testimony of an accomplice: and that part referring to the oral admissions of a party was properly refused because it was joined to the other, and the whole instruction, as thus presented to the court, was not correct, even if that part referring to "oral admissions of a party" had been correct. If counsel believed that the latter part of this instruction contained law applicable to the case, and helpful to their side of it, it was their duty to frame and present to the court a correct instruction embodying it, without joining thereto an irrelevant instruction regarding matter foreign to the record.

Counsel for appellant say: "When the court instructed the jury, as in specification of error No. 2, that the alleged statements of the defendant were entitled to great weight by the jury, we believe the court usurped the province of the jury and misled it; and we also contend that the whole instruction is argumentative and prejudicial to defendant's case." The record does not show either that any exception was taken to this instruction, or that it was "presented and given"; and, according to the interpretation heretofore by this court given to section 4391 of Compiled Laws of Nevada of 1900, it is not in our power to consider this assignment of error. The said section, as heretofore interpreted by this court, does not apply to a charge given by the court on its own motion. See *State* v. *Forsha*, 8 Nev. 137; *State* v. *Burns*, 8 Nev. 251; *State* v. *Rover*, 11 Nev. 343; *State* v. *Ah Mook*, 12 Nev. 369; and *State* v. *Bouton*, 26 Nev. 34, 62 Pac. 595.

Counsel say: "Upon the rulings on defendant's objections Nos. 1, 3, 4, 5: Counsel for the state must, of necessity, have known that each of these questions were ridiculously

leading and suggestive." After a very careful consideration of the record, we cannot say that the trial court abused its discretion in any one of its rulings on these objections, or that defendant was prejudiced thereby.

"Another assignment of error is the permitting of a witness to testify as to handwriting without, as it is claimed, a proper foundation therefor having been first laid. Witness had testified as follows:

"Q. Where do you reside, Mr. Hutchison? A. Ogden, Utah.

"Q. In what business are you engaged? A. In First National Bank.

"Q. In what capacity are you employed in that institution? A. Keep part of the books, and exchange teller.

"Q. Bookkeeper and exchange teller? A. Yes, sir, I keep part of the books.

"Q. Have you ever seen the defendant in this case before? A. Yes, sir.

"Q. Have you his signature? A. Yes, sir.

"Q. Have you it with you? A. Yes, sir.

"Q. I wish you would produce it, please. A. (Witness produces document.)

"Q. Was this signature made in your presence? A. Yes, sir.

"Q. By defendant? A. Yes, sir.

"Q. I desire to introduce this signature in evidence. I mean the card with the signature on it. Mr. Leishman: No objections. * * *

"Q. In the course of your occupation, Mr. Hutchison, are you familiar with, and do you make a study of, the signatures of people, and their handwriting, who have such transactions as this in your bank? A. Yes, sir; that is, we take these cards, with the signature of the depositors.

"Q. That is a part of your professional occupation? A. Yes, sir.

"Q. Now please state whether or not the signature 'Burns,' written on these documents to which I have called your attention, and the name 'Burns' as exhibited there on that card, and the handwriting generally on these documents, is the same as that on the card which has been introduced in evi-

dence, and which has on it the signature which was made in your presence in the banking institution in which you are engaged at Ogden.

"Mr. Leishman: We object to the question on the ground that the proper foundation has not been laid for the witness to give testimony on this subject, and the witness has not been proven to be an expert on handwriting, within the meaning of the law.

"The Court: The objection is overruled. (Exception taken by defendant upon the ground stated.)"

The witness then identified the handwriting of defendant in the writing and signature of documents that tended to show that defendant was guilty of the crime charged against him in the indictment. Under the testimony, the ruling, and the objection, we do not see error. The witness, we think, was shown to be properly qualified to testify as to the handwriting of defendant.

There is an assignment of error as to the ruling of the court on the motion of counsel for appellant to strike out the testimony of the witness Rocelli. This witness testified that the defendant had admitted to him that he had committed the robbery in question. The direct examination of this witness began on page 64 of the transcript in this case and ended on page 102. His cross-examination began on page 102, and proceeded to page 103, when the following occurred:

"Q. Have you ever been a witness in a case of this kind before? A. No, sir.

"Q. Have you ever been a witness in a courtroom before? A. No, sir.

"Q. You are familiar with the nature of an oath, are you not? A. Yes.

"Q. You understand what it is to be placed under oath as a witness? A. Oh, I don't know what an oath is.

"Q. Do you know what 'oath' means? Do you know what it means to take an oath—to hold up your hand and take an oath? A. I don't know what an oath is.

"Q. You don't know what the effect of an oath is? A. No, sir.

"Q. Do you know what the crime of perjury is? A. Yes.

"Q. What is it? A. It is lying, I guess.

"Q. You think it is lying? A. Yes, sir.

."Q. Lying when you are under oath, is it not? A. I think it is."

The cross-examination then proceeded until page 115 of the record was reached, when this occurs: "Mr. Leishman: If the court please, we have gone further than we intended to before making a motion. We now move to strike from the record all of the testimony of this witness, as incompetent, irrelevant, and immaterial, for the reason that he testified himself that he does not understand the nature and effect of an oath, and therefore his testimony cannot be relevant and competent. The Court: The motion is denied." Exception to the ruling was then taken. Thereafter the cross-examination proceeded until page 145 of the record is reached, and then commences the redirect examination, which continues until page 153 of record is reached, and then the recross-examination begins, and it continues until page 155 is reached, and the redirect examination begins, and it continues to page 157. Rocelli was subsequently recalled, and a direct examination of him began at page 167 and continued to page 170; and then at page 170 a cross-examination of him began, and it ended on page 174; and on page 174 a redirect examination began, and it ended on page 176; and then a recross-examination began, and it ended on page 178. Rocelli was called in rebuttal, and his direct examination began on page 277, and it ended on page 282; and on page 282 his cross-examination began, and it continued until page 293.

As it would be very inconvenient to copy all of this large amount of testimony in this opinion, or even to give a synopsis of it, it is deemed sufficient to say that there are 38 pages of very intelligent testimony given by the witness, by question and answer, before his statement was made that he did not know "what it is to be placed under oath as a witness," etc.; this being the statement on which counsel base the motion to strike out his testimony. Thereafter counsel cross-examined him to the extent of 13 pages, making in all 51 pages of testimony given before making their motion to strike out. In this latter part, too, the testimony of the witness was very intelligent testimony. Let it be kept in mind that the

witness, before making the statement on which the motion to strike out is based, had stated that he did know what an oath was, and that after making said statement on which the motion to strike out was based he stated that he knew what perjury was, and gave a fairly correct idea of what it was. Even stopping here, there is sufficient to sustain the ruling of the trial court denying the motion to strike out. When it is further considered that after the making and denying of the said motion the witness gives 67 pages of very intelligent testimony, making in all 118 pages of very intelligent testimony that was given by the witness, we can see nothing whatever that was erroneous in the ruling of the court denying the motion of counsel to strike out the testimony of the said witness.

As to the assignment of error that the verdict is contrary to the evidence, we deem it sufficient to say that we think the evidence, if true, was amply sufficient to sustain the verdict, and whether the evidence was true or not was a matter for the jury to determine, and not for this court.

The order of the trial court denying the motion for a new trial and the judgment of the said court in the case are affirmed.

BELKNAP, C. J., and TALBOT, J., concur.