[No. 2490]

## THE STATE OF NEVADA, RESPONDENT, *v.* FRED WILLBERG, APPELLANT.

[200 Pac. 475]

1. CRIMINAL LAW—NO REVERSAL FOR MISDIRECTION OF JURY, EXCEPT IN CASE OF PREJUDICE.

Under Rev. Laws, 7469, no judgment shall be set aside or new trial granted in any case on the ground of misdirection of the jury, unless, in the opinion of the court, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced defendant in respect of a substantial right.

2. CRIMINAL LAW—LAW OF EACH DEGREE OF OFFENSE SUGGESTED IN EVIDENCE SHOULD BE GIVEN TO JURY.

Where there are different degrees of an offense, the law should be given to the jury of each degree which the evidence tends to prove; otherwise, of any degree which it does not tend to prove.

3. HOMICIDE—CHARGE DEFINING VOLUNTARY MANSLAUGHTER NOT PREJUDICIAL.

In a prosecution for murder, where the court charged that defendant could be found guilty of murder in the first degree, or of manslaughter, the inclusion in the charge of a definition of voluntary, as well as involuntary, manslaughter, being merely explanatory of the offense of manslaughter, was not prejudicial to defendant.

4. CRIMINAL LAW—WITNESSES—JURY CANNOT CONSIDER IMMATERIAL FACT THAT WITNESS AT TRIAL DID NOT TESTIFY AT EXAMINATION.

At a preliminary examination the state is not required to introduce any more evidence than is necessary to give the committing magistrate reasonable grounds to believe a public offense has been committed, and that the person charged therewith committed it, so that the fact that a witness on

trial did not testify at the preliminary examination of defendant is an immaterial matter, which the jury are not to consider.

5. CRIMINAL LAW—INSTRUCTION IN MURDER CASE NOT ERRONEOUS AS ASSUMING TRUTH OF DISPUTED FACT.

In a prosecution for murder, where defendant claimed an accidental killing while trying to intimidate deceased into giving up his money, which he charged she had stolen from him, instruction that no person has a right, by the use of intimidation, etc., forcibly to take from the possession of another, against his will, personal property, whether he claims such property is his own or not, being an abstract legal proposition, without attempt to apply it to the facts, was not objectionable as assuming a material and disputed fact in the case to be true.

6. CRIMINAL LAW — REFUSAL OF INSTRUCTIONS APPLYING PRINCIPLES TO BOTH SIDES' THEORIES OF CASE ERRONEOUS.

It is error in a criminal case to refuse to give instructions both for the state and defendant applying abstract legal principles to both the state's and defendant's theory of the case.

7. HOMICIDE—DEFENDANT ENTITLED TO A CHARGE MEETING HIS THEORY THAT KILLING WAS INVOLUNTARY MANSLAUGHTER.

In a prosecution for murder, the defense being that the killing was accidental, while defendant was trying to intimidate deceased into giving up money she had stolen from him, where the court charged for the state that no person has a right by the use of intimidation, etc., forcibly to take his property from the possession of another against such other's will, etc., it was erroneous to refuse to give an instruction offered by defendant to meet his theory that the homicide was, under the evidence, if an offense, involuntary manslaughter, though the charge as given by the court covered the statute law concerning involuntary manslaughter.

8. HOMICIDE—REFUSAL OF INSTRUCTION ON INVOLUNTARY MANSLAUGHTER NOT PREJUDICIAL.

In a prosecution for murder, the refusal of defendant's requested instruction, offered to meet his theory of the case that the homicide was, under the evidence, if an offense, involuntary manslaughter, *held* not so prejudicial to defendant as to have resulted in a miscarriage of justice, especially in view of instructions embodying the full and comprehensive language of the statute concerning involuntary manslaughter.

9. CRIMINAL LAW—REQUESTED INSTRUCTIONS PROPERLY REFUSED, WHERE COVERED BY CHARGE GIVEN.

Requested instructions may be refused, on the ground that they are covered in substance by instructions already given.

10. CRIMINAL LAW—DISPOSITION OF MOTION FOR NEW TRIAL DISCRETIONARY.

Whether motion for new trial shall or shall not be granted on the ground of newly discovered evidence is a proposition

addressed to the sound discretion of the trial court, and denial of such motion on such ground will not be reversed unless it clearly appears the court abused its discretion.

11. CRIMINAL LAW—NEWLY DISCOVERED IMPEACHING EVIDENCE NOT GROUND FOR NEW TRIAL.

It is the general rule, subject to rare exceptions, that, where the sole object of newly discovered evidence is to impeach an adverse witness, it is insufficient as a basis for granting new trial.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Fred Willberg was convicted of murder, and from the judgment, and order denying his motion for new trial, he appeals. **Affirmed.**

*Forman & McKnight,* for Appellant:

The court erred in giving instructions as to voluntary manslaughter, there being no evidence in support thereof (Territory v. Archuleta, 16 N. M. 219; State v. Crosby, 191 Pac. 1079) ; and in its instruction emphasizing the testimony of a witness who had not testified at the preliminary examination. "An instruction is erroneous and properly refused, * * * which singles out or emphasizes particular testimony or particular parts of the evidence and gives undue prominence thereto." 16 C. J. 1038, sec. 2479. The instruction as to intimidation of deceased by appellant was erroneous. The facts were disputed; many of them had no support whatever in the evidence. An instruction which assumes as true facts in dispute, or that are not admitted, is erroneous. Const. Nev., art. 6, sec. 12; State v. Buralli, 27 Nev. 41. It is not unlawful to take, or attempt to take, one's own property from the possession of a person not holding it under process of law. Bonnard v. State, 25 Tex. 862. An instruction that is confusing and misleading is objectionable. 16 C. J. 1036.

The court should have given a complete instruction as to the crime of murder. It is the duty of the court to explain the technical meaning of the terms used in the statute, and set forth accurately the essential elements of the crime. 21 Cyc. 1031, 1035. It was error

for the court to refuse to give the instruction as to murder requested by the defense. Wharton's Law of Homicide, 368; Sackett's Instructions (2d ed.), p. 685.

The court should have given defendant's proposed instruction as to involuntary manslaughter. State v. Kelly, 1 Nev. 225; State v. Benham, 23 Iowa, 154, 92 Am. Dec. 417; McDaniel v. State, 156 Ala. 40; Ford v. State, 71 Neb. 246; Austin v. State, 110 Ga. 748, 21 Cyc. 764.

It was error to refuse a new trial on the ground of newly discovered evidence. State v. Mounkes, 91 Kan. 665; Pettibone v. New Mexico, 201 Fed. 489; 20 R. C. L. 299. "Where it appears from competent and satisfactory evidence that a witness for the prosecution has deliberately perjured himself, and that without his testimony defendant would not have been convicted, a new trial should be granted." 16 C. J. 1189, 1190. "Where there was no reason to suspect certain testimony to be perjured, and no laches is shown, the courts will generally grant a new trial if, after the trial, evidence of its perjured character is discovered, and it is as to a material issue, or the verdict is based principally on such testimony." 20 R. C. L. 299.

*L. B. Fowler*, Attorney-General; *Robert Richards*, Deputy Attorney-General, and *Frank T. Dunn*, District Attorney, for Respondent:

The judgment of the district court should be affirmed. The instructions were full, complete and ample. The giving of an instruction on a lesser offense was advantageous to the appellant, and he therefore cannot complain. "It has even been held proper for the court to refuse instructions if they are given in substance in its charge, and the judgment will not be reversed for such refusal when it appears from the record that the law in the case had been laid down properly and fairly by the trial judge." State v. Buralli, 27 Nev. 41; State v. Ward, 19 Nev. 297. The court gave instructions on

every point actually involved in the case. State v. Cardelli, 19 Nev. 319.

"The prohibition against charging juries in respect to matters of fact was only intended to prevent judges from saying in regard to any fact in regard to which there was any evidence introduced that it was or was not established." State v. Anderson, 4 Nev. 265. The instructions of the court did not assume any state of facts, but simply enunciated correct principles of law. Bonnard v. State, 25 Tex. App. 173.

The denial of the new trial was proper. Evidence which will tend only to impeach a witness is not sufficient to warrant a new trial. "It is well settled that a new trial will not be granted to enable the defendant to procure evidence to contradict or impeach a witness." Spalding v. State, 162 Ind. 297; State v. Leuth, 128 Iowa, 189; State v. Lackey, 72 Kan. 95; State v. Lucas, 147 Mo. 70; Smiley v. Oklahoma, 15 Okla. 314; State v. Gardner, 33 Or. 149; State v. Hill, 39 Or. 95. When based on newly discovered evidence, the motion for a new trial is particularly not favored. State v. Matkins, 45 Mont. 58.

By the Court, SANDERS, C. J.:

The record discloses that Fred Willberg was informed against by the district attorney of Nye County for the murder of Dixie Miller, by shooting her with a revolver, in a resort known as Blake's Cabaret, in the town of Tonopah, Nye County, Nevada, on the 25th day of August, 1920. He was tried and convicted of murder in the first degree. The jury, as they are privileged to do in capital cases, by their verdict fixed the punishment at confinement in the state prison for life. A motion for a new trial was overruled. The court pronounced judgment and sentence in accordance with the verdict. The defendant appeals from the order denying him a new trial, and also from said judgment. The case has been submitted for decision on briefs.

Following the opening brief of counsel for defendant, it is first insisted that the motion for a new trial should have been granted for the reason that the jury was misdirected on material points of law, in the following particulars:

(1) That the court, of its own motion, included in its charge to the jury an instruction covering "voluntary manslaughter," when there was absolutely no evidence in the case to support the instruction.

(2) That one instruction, given at the request of the state, was designed to single out, and had that effect, a particular witness for the state, one W. D. Foster, whose testimony was quite damaging to defendant, giving his testimony verity and undue prominence over that of other witnesses.

(3) That the court, by one of its instructions, assumed a material and disputed fact in issue to be true.

(4) That the court erred in rejecting five instructions requested by the defendant, on the ground that their subject-matter had been in substance covered by other instructions.

1. It must be understood, and never overlooked, that it is the statute law of this state (Rev. Laws, 7469) that no judgment shall be set aside or new trial granted in any case on the ground of misdirection of the jury, unless in the opinion of the court after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right. The reason for this provision is that, since the law gives no redress for a wrong not resulting in injury, a party who has suffered nothing from an omission of a charge, an incorrect one, or other error relating thereto, will not be afterward heard to complain whether he objected at the time or not. 2 Bishop's New Crim. Proc. (2d ed.) sec. 980, subd. 7, p. 823. The law is designed to inhibit courts from setting aside judgments or granting new trials where, upon an examination of the entire case, the verdict is

manifestly right, or where it appears that no other verdict could have been properly returned by the jury under instructions entirely correct. 14 R. C. L. sec. 74, p. 815.

2. Coming to a discussion of the first objection to the instructions, it must be conceded that, where there are different degrees of an offense, the law should be given of each degree which the evidence tends to prove; otherwise of any degree which it does not. 2 Bishop's New Crim. Proc. (2d ed.) sec. 980, subd. 2, p. 820.

3. In this case the court instructed the jury that the defendant could be convicted of murder in the first degree or of manslaughter. It then by its charge defined manslaughter, both voluntary and involuntary, in the language of the statute. There is evidence in the case tending to reduce the charge from murder in the first degree to involuntary manslaughter. The court having charged that the defendant could be found guilty of murder in the first degree or manslaughter, the inclusion in the charge of the definition of voluntary manslaughter was merely explanatory of the offense of manslaughter, and was not harmful.

An alleged witness to the homicide was called by the state in rebuttal. His version of the killing varied but slightly from that of two other eye-witnesses who had testified in behalf of the state. His testimony was quite damaging to the defendant. It appears that upon cross-examination the witness stated that he had not testified at the preliminary examination of the defendant. The question and answer were not objected to by the state; but when the court came to charge the jury, it instructed as follows, at the request of the state, over the objection of the defendant:

"At a preliminary examination the state is not required to introduce any more evidence than is necessary to give the committing magistrate reasonable grounds to believe that a public offense has been committed, and that the person charged thereof committed

it. Therefore, if any witness has testified at the trial of the case who did not testify at the preliminary examination of the defendant, it is an immaterial matter, which you are not to consider in your consideration of his testimony at the present trial."

4. This instruction is a correct statement of the law. Whether or not it was actually used for the illegal purpose of singling out and bolstering up the testimony of a particular witness is not properly before us.

It is next contended that the giving, at the request of the state, of the instruction following was prejudicial error:

"No person has a right, by the use of intimidation, force, and threats, to forcibly take from the possession of another, and against his will, personal property, whether they claim such property is their own or not; and a person guilty of killing another in the perpetration of such an act is guilty of a public offense."

5. The defense of the accused, and his only defense, was that the homicide was accidental and unintentional. His version of the killing tends to show that he exhibited the revolver to the deceased for the purpose of intimidating, threatening, and coercing her into giving up to him the sum of $30 of his money, which he had prior to and at the time of the homicide accused the deceased of having stolen from him while he was asleep on a chair in Blake's Cabaret several hours before the killing. He claimed that when the deceased observed the revolver, loosely held in one of his hands, she immediately seized it, and in the struggle for its possession it was twice discharged. He testified that he had not examined the revolver to see if it was loaded; that it was not aimed; that he had no intention of killing the woman, and that the homicide was purely an accident and unintentional. The jury, however, took an opposite view of the killing, and found the defendant guilty of deliberate murder. The instruction was manifestly intended to assert an abstract legal proposition,

without attempting to apply it to the facts, leaving it to the jury to make the application to the facts as found by them. As such, it is not open to the objection that it assumes a material and disputed fact in the case to be true. 14 R. C. L. sec. 12, p. 740.

6-8. It is usual in criminal cases to give instructions both for the state and the defendant which apply abstract legal principles to both the state's and the defendant's theory of the case. To refuse instructions of this character is error. State v. Hennessy, 29 Nev. 344, 345, 90 Pac. 221, 13 Ann. Cas. 1122. The concluding portion of the instruction is not susceptible of the interpretation that it assumes as true that the defendant killed the deceased in cold blood in the commission of a public offense. It is earnestly insisted that, as the court gave this instruction at the request of the state, it manifestly erred in refusing to give an instruction offered by the defendant to meet his theory of the case, that the homicide was, under the evidence, if an offense, involuntary manslaughter. Upon the authority of State v. Hennessy, supra, the refusal of such instruction was error. The only reason assigned for its rejection was that involuntary manslaughter had been sufficiently covered by other instructions. There is no doubt that the charge given by the court fairly and fully covered the statute law concerning involuntary manslaughter; but, nevertheless, the defendant was entitled to have the law declared in reference to the facts which he contends the evidence reasonably tends to show, and to an instruction defining the law as applicable to his defense, when there was competent evidence reasonably tending to substantiate it. State v. Hennessy, supra; 14 R. C. L., sec. 58, p. 800. Yet, upon an examination of the entire case, the rejection of the instruction could not have resulted in a miscarriage of justice, especially in view of the instructions embodying the full and comprehensive language of the statute concerning involuntary manslaughter, and leaving it to the jury to apply it to the facts as found by them.

9. The other instructions requested by the defendant were properly refused, on the ground that they were covered, in substance, by instructions already given.

10, 11. It is earnestly urged, in the last place, that the court erred in its refusal to grant the defendant a new trial on the ground of newly discovered evidence tending to show that one of the alleged witnesses to the homicide (W. D. Foster) could not have been present at the killing, and that he deliberately perjured himself. Whether a motion for a new trial shall or shall not be granted upon the ground of newly discovered evidence is a proposition which is addressed to the sound discretion of the trial court, and the denial of a new trial on that ground will not be reversed unless it clearly appears that the court abused its discretion, which is not the case here. People v. Bones, 35 Cal. App. 438, 170 Pac. 166; People v. Loui Tung, 90 Cal. 377, 27 Pac. 295; People v. Tallmadge, 114 Cal. 427, 46 Pac. 282. And furthermore, it is the general rule, subject to rare exceptions, that where the sole object of the newly discovered evidence, as in this case, is to impeach an adverse witness, it is insufficient as a basis for granting a new trial. People v. Lim Foon, 29 Cal. App. 283, 155 Pac. 477; People v. Goldenson, 76 Cal. 328, 19 Pac. 161; People v. Anthony, 56 Cal. 399; 3 Wharton's Crim. Proc. (10th ed.) sec. 1810; 2 Bishop, supra, sec. 1279, p. 1118. The motion for a new trial on the ground of newly discovered evidence in the case is certainly not entitled to any exemption from the general rule.

There being no error in refusing to grant defendant a new trial upon the ground of newly discovered evidence, and being of the opinion that the misdirection of the jury did not result in a miscarriage of justice, and that the defendant was not actually prejudiced in respect to a substantial right, the judgment and order appealed from must be affirmed; and it is so ordered.