THE STATE OF NEVADA, RESPONDENT, v. PAUL MAYNARD SKAUG, ALIAS PAUL MASTERSON, APPELLANT.

No. 3429

September 5, 1945.                      161 P. 2d 708.

*Martin J. Scanlan,* of Reno, for Appellant.

*Alan Bible,* Attorney General, *George P. Annand* and *Homer Mooney,* Deputy Attorneys General, of Carson City, and *Melvin E. Jepson,* District Attorney of Reno, for Respondent.

## OPINION

By the Court, DUCKER, J.:

Appellant was informed against and tried in the Second judicial district court of Washoe County for the murder of one Beate Voss. The jury returned a verdict as follows: "We, the jury in the above-entitled action do

find the defendant guilty of murder of the first degree." On this verdict the court pronounced judgment of death, from which this appeal is taken.

While there is no contention that the verdict is not supported by the evidence, we deem it advisable to set out substantially the material facts. On the night of the 16th of September 1944, Mrs. Beate Voss, an elderly lady who had returned to her home in Reno alone around the hour of 10 : 30, was shot and killed by an intruder who was burglarizing the place. The body was discovered the next morning by a neighbor's maid who had noticed that a screen had been removed from one of the windows. In addition to the bullet wound in the body there were three lacerations on the scalp, and abrasions on the back of the right hand and fingers. The tendons of the fingers were damaged. In the house was found a steel pinch or claw bar. There were blood stains on the bar and also some gray hairs of the same type and color of the hair on the victim's head. A number of articles were stolen from the house, including a .32 caliber Smith and Wesson revolver, a box of .32 caliber cartridges, a fountain pen and a gold band ring.

Appellant was in Reno on the 15th of September and registered at a hotel under the name of "Paul Masterson, Plymouth, Wis.," and again on September 16th. He occupied the room on both occasions and relinquished it on the early morning of the 17th. On September 30, 1944, appellant was picked up on the highway near Marysville, California, by Talmadge Norwood, a scout captain of the California highway patrol, questioned about his draft registration and taken to the Marysville police station in the city of Marysville. There a .32 caliber Smith and Wesson revolver was taken from appellant's person. This was the weapon which was stolen from the house and with which the woman was slain. Also, at that time, was found in a suitcase he had been carrying, among other articles, the box of .32 caliber cartridges, the fountain pen and the gold band ring, stolen from the Voss home on the night of the killing. On the

night of September 30 at the Marysville police department in the presence of the chief of police of Reno and other officials, including the patrol officer who effected the arrest, appellant made a confession which was reduced to writing and signed by him. He admitted the shooting of Mrs. Voss, who had come into the house while he was prosecuting the burglary; shooting her with the revolver he had found there, and striking her over the head with it. In the confession he told how, after the shooting, he had made his way south to Los Angeles and thence north through California to a place where he was apprehended. Moreover, under specific questions asked by the chief of police, he admitted the commission of a robbery on the way from Los Angeles, a burglary in Elko before coming to Reno, and two burglaries in Reno besides the one during which the shooting occurred. The confession was read to the jury and as to the recital of each of these independent felonies, counsel for appellant objected on the ground that the evidence was immaterial and incompetent. The objections were overruled and the confession admitted in evidence in its entirety.

Before the written confession was introduced in evidence, Talmadge Norwood, the patrol officer who apprehended appellant, and who was present when he made the confession, testified in behalf of the state over objections, to hearing him admit the burglaries and robbery stated in the confession. The court afterwards ordered such evidence stricken and instructed the jury to disregard it.

Richard Heap, superintendent of the bureau of identification of Reno police, a witness for the state, testified to being present in the office of the chief of police in Reno and hearing appellant at the request of the district attorney, make a statement in which he admitted a burglary in Elko, a couple of burglaries in Reno besides the one in which Mrs. Voss was killed, and a robbery in Fresno, California. In this statement he said when the lady came into the room and snapped on the light and

saw him, she commenced to scream and "holler" and that he struck her with the gun to silence her, and the gun went off. Objections were taken to the admission of the other offenses except the burglary in Elko and the one in which the killing occurred.

The first three assignments are levelled at the rulings allowing in evidence admissions of other offenses, except the one in which the killing occurred. We think the assignments are well founded. There was no connection whatever between any of them and the crime charged. It is well settled that evidence that accused has committed another crime independent of and unconnected with the one for which he is on trial, is inadmissible. The rule has well established exceptions and both have received the attention of this court in a number of cases. State v. McMahon, 17 Nev. 365, 30 P. 1000; State v. Vaughan, 22 Nev. 285, 39 P. 733; State v. Roberts, 28 Nev. 350, 82 P. 100; State v. McFarlin, 41 Nev. 486, 172 P. 371; State v. Monahan, 50 Nev. 27, 249 P. 566; State v. Hall, 54 Nev. 213, 13 P. 2d 624; State v. Behiter, 55 Nev. 236, 29 P. 2d 1000.

The state, in the answering brief, admits that if witnesses had been brought to testify to the commission of such other crimes, their testimony would have been objectionable. This is an admission that there is no connection between the other crimes and the crime charged. However, it is insisted by the state that where, as here, the appellant makes the admissions in a confession to witnesses, the entire conversation is admissible. This is not the rule if the part relating to such other offenses is separable. If so, it must be excluded. People v. Loomis, 178 N. Y. 400, 70 N. E. 919; State v. Wolff, 337 Mo. 1007, 87 S. W. 2d 436; Stagemeyer v. State, 133 Neb. 9, 273 N. W. 824; People v. Spencer, 264 Ill. 124, 106 N. E. 219; State v. Lord et al., 42 N. M. 638, 84 P. 2d 80; Rounds v. State, 171 Tenn. 511, 106 S. W. 2d 212; Robinson et al. v. United States, 61 App. D. C. 370, 63 F. 2d 147; 22 C. J. S. Criminal Law, sec. 820, pages 1440,

1441; Underhill's Criminal Evidence, 4th ed. sec. 265, p. 513.

In People v. Spencer, supra, the court said [264 Ill. 124, 106 N. E. 225]:

"While the fact that such statement (confession) may include another offense as well as that charged does not prevent the confession being received and going to the jury with proper instructions when there can be no separation of the relevant from the irrelevant parts, when the relevant parts can be separated from the irrelevant, this must be done, and that part, only, of the confession admitted which is material to the issues on trial." (Citing authorities.)

In Rounds v. State, supra, the court said [171 Tenn. 511, 106 S. W. 2d 214]:

"Where a confession indicates that the accused has been guilty of another offense in addition to that for which he is being tried, that part of the confession relating to the distinct offense is inadmissible if it can be separated from the portion of the confession relating to the charge in issue."

In the case before us it appears that the other offenses were clearly separable. None tends in the slightest degree to prove the other or the offense charged. There is no nexus between any of them. They could have been and should have been excluded from the consideration of the jury. As said in People v. Loomis, supra [178 N. Y. 400, 70 N. E. 921]: "A simple statement from the district attorney that he desired only that portion of the conversation which related to the crimes charged, would have eliminated everything else without the slightest injury to his case."

■ The admission of the other offenses testified to by the witness Heap should also have been excluded. They were clearly separable from the confession. The testimony of the patrol officer as to the other offense should not have been permitted in the first instance. The promise of the district attorney to connect them up was

obviously incapable of fulfillment. True, the court struck them out and instructed the jury to disregard them, but the district attorney's offer of proving a connection enabled him to get the other offenses before the jury by the process of infiltration, so to speak.

But in view of our statute and the nature and conclusiveness of the evidence, it does not follow that allowing the jury to consider the other offenses constituted reversible error. The evidence presents a case that calls loudly for the extreme penalty.

■ An aged lady after spending a pleasant social evening with a neighbor, on returning to the shelter of her home alone in the late hours of the night, was set upon by a cold blooded villain and slain under circumstances of revolting atrocity. Besides the death wound inflicted with her husband's revolver, she was brutalized by clubbing, her valuables were stolen, and her body left broken and bleeding upon the floor of the ruined home. Hence, in the presence of such enormous and clearly proven guilt we will not pause to speculate as to whether, if evidence of other offenses had been omitted the jury might have returned a verdict carrying a lesser penalty. Section 11266 N. C. L. prevents a reversal. It provides:

"No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

■ We have examined the entire case and in our opinion no such result appears. Particularly is this so because of the voluntary confession. People v. Hamet, Cal. App., 159 P. 2d 702; People v. Epstein, 21 Cal. App. 2d 488, 69 P. 2d 454. An error of the injurious consequences mentioned in the statute must appear

affirmatively to warrant a reversal in any case. State v. Willberg, 45 Nev. 183, 200 P. 475; State v. Williams, 47 Nev. 279, 220 P. 555; State v. Ramage, 51 Nev. 82, 269 P. 489.

The next three assignments are directed to the court's refusal to give instructions offered by appellant. The first of these proposed instructions presented by assignment number four, is as follows:

"Some testimony has been offered tending to show the mental caliber or condition of the defendant. This testimony may be considered by you as bearing on the intent with which the defendant acted, should you find the defendant did the things charged against him. It may also be considered by the jury in determining whether the alleged confession was voluntary or involuntary and whether true or untrue. Should the jury fail to find the defendant had sufficient mental understanding to form an intent to do a wrongful act deliberately on September 16, 1944, you should find the defendant not guilty. Should the jury find the alleged confession was involuntary by reason of the mental condition of the defendant, you should disregard such confession."

The court did not err in refusing to give the above proposed instruction. There was no conflict in the evidence on which the court found the written confession was voluntary and submitted it to the jury. The chief of police testified that no force was used upon the appellant; no hope of reward offered him; no threats made, and that he appeared to be in a normal condition mentally. No evidence was offered by appellant to rebut this testimony, nor was any objection made to the introduction of the confession in evidence on the ground that it was not voluntary. True, after the confession was read in evidence the appellant moved to strike it and have the jury instructed to disregard it on the ground that it was not voluntary, and made while under arrest and under duress and pressure of seven officers. This motion was properly denied. No evidence of duress appeared. As the confessions were shown to have been

made without threat, compulsion or inducement of any kind, it would not have been proper for the court to submit such an issue to the jury. As stated in 23 C. J. S., Criminal Law, sec. 1232, page 797:

"If there is no evidence, or only insufficient evidence, to show that a confession is involuntary, a charge that it should not be considered if the jury believe it to be involuntary, is properly refused."

See cases cited in Note 42, to the text. See also State v. Williams, 31 Nev. 360, 102 P. 974.

■ The proferred instruction being erroneous in part, at least, the court was justified in refusing to give it in its entirety. State v. Burns, 27 Nev. 289, 74 P. 983. This is particularly true because the other element included in it was fully covered in the charge on the defense of insanity.

Assignment number 5 is aimed at the mistake of law claimed to have been committed by the court in refusing to give the following requested instruction:

"The jury are instructed that you may take into consideration in determining the degree of accused's guilt such evidence as may be applicable to the defendant's mentality."

■ The refusal was not in error. State v. Fisko, 58 Nev. 65, 70 P. 2d 1113; State v. Maioni, 78 N. J. L. 339, 74 A. 526, 20 Ann. Cas. 204. Appellant has cited no authority for his contention except the text found in 16 C. J., paragraph one of section 2456; 23 C. J. S., Criminal Law, sec. 1290. It is not in point. That paragraph pertains to the assessing of punishment by the jury, while the proferred instruction proposed to instruct as to certain evidence to be considered in determining the degree of guilt. It runs counter to the ruling in State v. Fisko, supra [58 Nev. 65, 70 P. 2d 1118]:

"If by reason of insanity appellant did not know the nature and quality of his act, and that it was wrong, he was absolved from all guilt; otherwise in whatever lesser degree his mind may have been affected by drink or other cause, he is amenable to punishment as one of normal mind."

We affirm that ruling.

By assignment number 6 exception is taken to the court's refusal to give the following proposed instruction:

"You are instructed that the subject of insanity is not entirely removed and it is proper for counsel to argue that while the defendant is conclusively presumed to be sane to a degree that it would make the defendant responsible for acts committed by him that does not preclude counsel from arguing that the person on trial may be afflicted with a mental disease called insanity but of a lesser nature, but that is, a degree which would not produce an excuse or a defense to a criminal charge."

The trial court refused this instruction on the ground that it is vague and indefinite. We concur in that opinion. The argument in its defense is that the jury if it found the defendant guilty of murder of the first degree, had the discretion to fix the punishment at death or life imprisonment, and it was the duty of his counsel to argue along the lines of his mental condition to aid the jurors in exercising that discretion, and that it was the duty of the court to sanction such a line of argument. The court was not obligated to sanction such an argument, and it is extremely probable that counsel made the argument without such sanction. The jurors were instructed that it was within their province if they found the defendant guilty of murder of the first degree to fix the punishment at confinement in the state prison for life. It would have been improper for the court to have stressed any particular evidence to consider in exercising that discretion. As said in People v. Kamaunu, 110 Cal. 609, 613, 42 P. 1090, 1091:

"There was no error in refusing to instruct the jury as to how they should use the discretion given them in regard to the punishment in case they found the defendant guilty. This discretion is given to the jury, and the court cannot direct or advise them upon the subject further than to inform them of their function."

Exception is taken by appellant to the instruction given by the court informing the jury as to their

duty, if they found appellant guilty of murder of the first degree, on account of the substitution of the word "privileged" for the word "discretion" employed in the statute. If there was any error in this it was not prejudicial.

Appellant assails the validity of the verdict and the judgment of death pronounced upon it. It is contended that as the jury found the appellant guilty of murder of the first degree it was their duty to fix the penalty in the verdict either at death or confinement in the state prison for life under the following provision of section 10068 N. C. L.:

"Every person convicted of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same. * * *."

As before shown, the jury did not fix the penalty in their verdict. As to their duty in this regard they were instructed:

"If the jury finds the defendant guilty of murder in the first degree, then the jury is privileged to fix the punishment at death or confinement in the State Prison for life. If, however, after so finding the degree of the offense, the jury does not agree as to the fixing of the punishment and does not fix the punishment, it will follow as a matter of law that the Court will have to pass sentence inflicting the death penalty."

By this instruction the jury was correctly informed as to the court's function in the event they should find the appellant guilty of murder of the first degree, and did not fix the punishment, consequently the court was bound to pronounce the sentence of death on the verdict returned. State v. Russell, 47 Nev. 263, 274, 220 P. 552, 222 P. 569; Kramer v. State, 60 Nev. 262, 108 P. 2d 304. In each of the above cases such a verdict and the judgment of death pronounced upon it were upheld.

Counsel for appellant was aware of these cases, but in an elaborate argument in his brief and orally on the

hearing, he had urged us to overrule them and establish a new norm on the subject in this jurisdiction. We commend his zeal, which is always to be commended in an attorney defending a capital case, but we are of the decided opinion that our construction of the statute in State v. Russell and Kramer v. State, supra, is correct.

The question of the proper construction of the statute was exhaustively examined in Kramer v. State, supra, and we feel that a reiteration of those views would serve no useful purpose. It suffices to say that People v. Hall, 199 Cal. 451, 249 P. 859, stressed by appellant, which placed a construction on the statute differing from that given it by former decisions of that court in force when our statute was adopted, was duly considered in the former case. Our opinion remains unchanged. As observed in Kramer v. State, supra, if there is to be a different rule in this state it must be established by the legislature. It would be indeed a melancholy reflection on the administration of justice in this jurisdiction if Kramer and Loveless had been done to death on a void verdict. It was to avert the happening of such a mournful event that the judgment in the case of State v. Loveless was reversed on the first appeal. 62 Nev. 17, 136 P. 2d 236. It was affirmed on the second appeal. 62 Nev. 312, 150 P. 2d 1015. Happily, for the repose of the judicial conscience, justice did not miscarry in the former case or in the latter on the second trial.

■ The remaining assignments of error, to wit, that appellant was deprived of his constitutional right of trial by jury, and that the court usurped the function of the jury by sentencing appellant to death, are to all intents and purposes disposed of by our ruling on the validity of the verdict and the judgment of death. Both assignments are predicated upon the silence of the verdict as to the penalty. It is not contended, as indeed it could not be, that appellant was deprived of the benefit of trial by jury in any other way. We have shown that he was not deprived of that right in that way. In discussing this assignment reliance is had on State v. Hall, supra, and

State v. Loveless, supra, and passages quoted from the opinions. If the construction placed upon the California statute by the former case had been placed upon our statute then State v. Hall would be in point on appellant's contention that he had been deprived of a jury trial, and the first decision in State v. Loveless, supra, would also be in point, for the principle applied in each case is the same. But the construction we have placed on our statute due to its adoption by our legislature when the former decisions of the supreme court of California were in force, is contra. Consequently, neither case is in point here. Under our construction there is no mandate to the jury in section 10068 to fix the punishment for murder, as there is to designate the degree. The jury in the first instance, if they find murder of the first degree, have the discretion to fix the punishment at confinement in the state prison for life. If they do not exercise that discretion the trial court must adjudge the penalty at death. In the latter instance no discretion is involved. An injunction is laid on the jury to designate the degree and if they fail to do so a defendant has not had the benefit of a jury trial. Consequently, in the Loveless case on the first trial there was a miscarriage of justice on that account.

As to the last assignment, it follows from what we have held, that there was no usurpation of the functions of the jury by the trial court in sentencing the appellant to death.

As there is no error in the record to the actual prejudice of the appellant in respect to a substantial right, the judgment appealed from is affirmed, and the district court is directed to make the proper order for the carrying into effect by the warden of the state prison the judgment rendered.

### ON PETITION FOR REHEARING

November 15, 1945.                    163 P. 2d 130.

*Martin J. Scanlan,* of Reno, for Appellant.

*Alan Bible,* Attorney General, *George P. Annand* and *Homer Mooney,* Deputy Attorneys General, of Carson City, and *Melvin E. Jepson,* District Attorney, of Reno, for Respondent.

## OPINION

By the Court, DUCKER, J.:

■ The points made in the petition for rehearing were all disposed of, and we think correctly, in our former opinion; consequently a rehearing if granted would serve no useful purpose. We will refer only to one question.

■ The argument is made that this court reached an erroneous conclusion in holding that the admission of evidence of offenses unconnected with the crime charged did not constitute reversible error. We pointed out in our original opinion that this was so because all the evidence, independent of these other offenses, was so conclusive of appellant's guilt of murder of the first degree under cruel circumstances, that their admission had not resulted in a miscarriage of justice, or actual prejudice to him in respect to a substantial right. There is not anything in the petition or otherwise that causes us to doubt the soundness of our ruling. In this connection it is urged, as it was orally and in counsel's briefs on the hearing of the appeal, that if the other offenses had not been admitted in evidence the jury might have fixed the punishment at confinement in the state prison for life.

We disposed of that argument also in the original opinion. The contention is merely a guess and we are not inclined to speculate concerning it. The contention would have the court indulge a presumption in favor of the appellant without any legitimate basis for the inference. This we cannot do. The statute (sec. 11266 N. C. L.) places the burden on the appellant to show an error of the kind authorizing this court to set aside the judgment. As we said in State v. Williams, 47 Nev. 279–285, 220 P. 555, 557: "From a reading of this statute it must not only appear that the trial court erred, but it must appear affirmatively that the error resulted in a miscarriage of justice, or actually prejudiced the defendant. In other words, we can indulge in no presumption favorable to the defendant. Such is the clear, unequivocal, unambiguous provision of the statute." State v. Willberg, 45 Nev. 183, 200 P. 475, and State v. Ramage, 51 Nev. 82, 269 P. 489, are to the same effect. Because of the statute as thus construed, the principal case of Williams v. State, 183 Ark. 870, 39 S. W. 2d 295, cited in appellant's petition, is of no value as an authority here. In Arkansas, according to the case cited, the law is that evidence improperly admitted must be treated as prejudicial unless there is something to show that it is not. In Nevada, as we have seen, prejudice must affirmatively appear.

No good cause being shown for a rehearing, it is hereby denied.

TABER, C. J., concurs.

HORSEY, J., did not participate.