JOHN A. KRAMER, Appellant, *v.* THE STATE OF NEVADA, Respondent

No. 3318

December 18, 1940.

108 P.(2d) 304.

*Lewis W. Rogers,* for Appellant.

*Gray Mashburn,* Attorney-General, *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, and *John W. Bonner,* District Attorney, for Respondent.

## OPINION

By the Court, TABER, C. J.:

This is an appeal from a judgment of death upon a verdict of murder of the first degree returned by a jury in the Seventh judicial district court, White Pine County. At the trial the state was represented by Mr. John W. Bonner, district attorney of White Pine County, and the defendant by Mr. James M. Collins, of Ely.

Included in the trial court's instructions to the jury were the following:

" * * * the jury before whom any person informed

against for murder shall be tried, shall, if they find such person guilty of murder of the first degree, designate by their verdict whether such person shall suffer death or confinement in the state prison for life."

"Should you conclude that the Defendant, John A. Kramer, is not guilty, the following should be the form of your verdict:

" 'We, the Jury in the above-entitled cause, find the Defendant, John A. Kramer, not guilty.'

"Should you conclude that the Defendant, John A. Kramer, is guilty, one of the following may be the form of your verdict, as you shall decide:

" 'We, the Jury in the above-entitled cause, find the Defendant, John A. Kramer, guilty of murder of the first degree, as charged in the information, and fix the penalty at death.'

"or

" 'We, the Jury in the above-entitled cause, find the Defendant, John A. Kramer, guilty of murder of the first degree, as charged in the information, and fix the penalty at confinement in the State Prison for life.'

"or

" 'We, the Jury in the above - entitled cause, find the Defendant, John A. Kramer, guilty of murder of the second degree.'

"or

" 'We, the Jury in the above-entitled cause, find the Defendant, John A. Kramer, guilty of manslaughter.' "

"After the Jury have retired for deliberation, if there is any disagreement among them as to any part of the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon their being brought into court, the information shall be given them in the presence of, or after notice to, the District Attorney and the defendant and his counsel."·

Upon retiring to deliberate upon its verdict, the jury was handed the instructions of the court and five forms

of verdict corresponding to those above set forth. Some hours later the jury returned into court, and upon being asked whether it had arrived at a verdict, the Foreman replied: "No, your Honor. The Jury wishes further instructions before coming to a verdict. The Jury wishes to know if it is absolutely necessary that the Jury use the forms submitted for the verdict?" The judge and counsel retired and after conferring in chambers, returned into court, whereupon the following proceedings took place:

"Mr. Collins: If your Honor please, in view of the question that has just been asked by the Jurors, I am willing—with your Honor's permission—to suggest and stipulate with the district attorney that your Honor might answer the question in substance that the Jury is not bound to use those identical forms or the precise words contained therein for their verdict, and if they desire to make their question more clear to your Honor, that your Honor will be glad to give them an instruction which your Honor thinks is proper.

"Mr. Bonner: The state, if your Honor please, will stipulate and agree to that proposition as suggested by Mr. Collins.

"Court: Gentlemen of the Jury, as stipulated by counsel, you are not bound to use these identical forms or concise forms for your verdict, and if you desire at this time to make your question more clear, the court will consider further instructions.

"Foreman Topholm: Your Honor, it is the unanimous decision of the Jury to ask the court to use the form whereby we don't have to stipulate the sentence of the defendant.

"Court: The court will give you instructions on that. Counsel will retire with the court."

The judge and counsel thereupon again retired to chambers, and upon returning into court, the jury was further instructed, in writing, as follows: "You are instructed that if the Jury fails to agree in fixing the

penalty, and return a verdict finding the defendant guilty of murder in the first degree, it would follow as a matter of law that the court would have to pass a sentence inflicting the death penalty." Along with this instruction, there was handed the jury another form of verdict reading, "We, the Jury, in the above-entitled cause, find the Defendant, John A. Kramer, guilty of murder of the first degree as charged in the information." The court then stated to the jury: "You may take that instruction and the other form of verdict with you to the Jury room and retire for further deliberation." The jury, accordingly, again retired for deliberation, and more than two hours later returned into court. Upon being asked by the court whether the jury had reached a verdict, the foreman replied that it had; and being directed to declare it, the foreman read the verdict, which, omitting the formal parts, was in the following words: "We, the Jury, in the above-entitled cause, find the Defendant, John A. Kramer, guilty of murder of the first degree as charged in the information and recommend leniency." The last three words were written in with pen and ink.

Thereupon the following proceedings were had:

"Court: This is not a verdict in accordance with the law. It is not determinative nor consistent.

"Mr. Collins: I feel that the Jury should be advised that a recommendation of leniency is no part of a verdict and cannot be considered by your Honor.

"Court: That is the law.

"Mr. Bonner: That's right.

"Court: The court will have to ask you to return for further deliberation; that leniency is not according to law in that verdict. You may retire again gentlemen, for further deliberation."

The foregoing proceedings took place on March 21, 1940, from about midafternoon until near midnight. On the following morning the jury brought in this verdict: "We, the Jury, in the above-entitled cause, find the

Defendant, John A. Kramer, guilty of murder of the first degree as charged in the information." The form used for this verdict was the same as the previous one, except the words "and recommended leniency" were crossed out with pen and ink. The verdict having been recorded, the court said: "Gentlement of the Jury, so say you all, is that your verdict?" To which the jurors replied: "Yes, sir." The court then fixed the time for pronouncing judgment, and defendant was later sentenced to death. No motion for new trial was made, and it is not contended that the evidence was insufficient to justify the verdict.

In his assignment of errors, the appellant claims that the trial court erred:

"1. In instructing the jury that it was not bound to use the precise language as given in the forms of verdict theretofore submitted to them.

"2. Having so instructed the jury, in refusing to accept the original verdict returned by the jury, i. e. 'We * * * find the defendant * * * guilty of murder in the first degree and recommended leniency.'

"3. In not instructing the jury to disregard the remarks of counsel for the State and the defendant that the 'recommendation of leniency was no part of the verdict and the court could not consider it.'

"4. After having given the instruction 'that the jury was not bound to use the precise words in the forms of verdict already submitted,' and under all the circumstances and at the particular time, in then giving them a contradictory instruction that 'if the jury failed to *fix* a penalty or to *agree* upon a penalty, it would follow * * * that the court would fix the penalty at death.'

"5. After having instructed the jury that it might bring in an informal verdict (and before rejecting it), in not assisting the jury, by ascertaining from their foreman, or the entire body of jurors, just what their intention and meaning were, and then helping them to prepare a verdict in such form as would be acceptable, but, nevertheless, retaining the clear meaning of the

original verdict with all fair intendments to support it, which would have made it life imprisonment, and not death. The Record on Appeal nowhere shows any such inquiry or assistance. The court reporter's transcript, which is on file, however, shows clearly that no such inquiry or assistance was made or given.

"6. In confusing, misleading, and causing the jury to contradict themselves by the contradictory instructions above mentioned, inducing them to defeat their purpose as first expressed, and compelling them to render a verdict which was accepted as final, but flatly contradicted the meaning, purpose and intent of their original verdict, that is: one of death instead of life imprisonment.

"7. In abridging the privileges and immunities of the defendant; depriving him of life without due process of law, and denying him the equal protection of the law, contrary to the XIV Amendment to the Constitution of the United States, and Sec. 8. of Art. I of the Constitution of the State of Nevada, in committing the errors above mentioned, and in sentencing the defendant to death on a verdict which did not justify such sentence.

"8. In violating Sec. 11020 N. C. L. by refusing to accept the original, informal verdict, particularly after he had instructed them that they might bring in an informal verdict.

"9. In accepting the second verdict the jury brought in, which was just as informal and untechnical as their first verdict, which he refused to accept, since the jury had not told the Court that they (1) could not agree on the penalty, or (2) that they had not fixed the penalty. Whereas, what they did say was, 'Your Honor, it is the unanimous decision of the jury to ask the Court to use the form whereby we don't have to "stipulate" the sentence of the defendant.'

"10. In sentencing the defendant to death under the circumstances, which showed the intent and meaning of the jury to be the lesser penalty should be inflicted by their use of synonymous and equivalent words.

"11. In not excusing the jury for their persistence in

bringing in informal verdicts, and having another trial; or, if he would not excuse them, to show them how to bring in a formal verdict—one of the several forms he had submitted to them, and instructed them to use. '* * * one of the following *may be* the form of your verdict.'

"12. In violating the humane, modern trend of jurisprudence, and the policy of the criminal practice of Nevada, that the exact words of a statute are not necessarily to be used, as shown in such sections of our criminal practice at N. C. L., secs. 10854–10857.

"13. In ordering, in the death warrant that defendant should be delivered to the warden of the State Prison of the State of Nevada, at *Carson City,* Nevada, and there confined, and *there* executed, for the reason that this Court will take judicial notice of the fact that the State Prison of the State of Nevada is *not* in *Carson City,* Nevada.

"14. In (1) inconsistently, contradictorially and vaguely instructing the jury regarding their verdicts, as aforesaid, and in (2) not clearly, explicitly, unmistakably instructing them in such a manner that they would not be misled or fail to understand his meaning, or contradict themselves.

"15. In failing to properly, concisely, explicitly and unmistakably instructing the jury of his own motion, whether requested by counsel for defendant to do so or not, and notwithstanding the stipulation of counsel for the state and defendant that improper instructions be given."

Section 10068 N. C. L. 1929 reads, in part: "Every person convicted of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same. * * *"

Section 11019 N. C. L. 1929: "When there shall be a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion and direct the jury

to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there shall be a verdict of acquittal, the court shall not require the jury to reconsider it. If the jury render an informal verdict, the court may direct them to reconsider it, and it shall not be recorded until it is rendered in some form from which it can be clearly understood what the intent of the jury is."

Sec. 11020 N. C. L. 1929: "If the jury persist in finding an informal verdict, from which, however, it can be clearly understood that their intention is to find in favor of the defendant upon the issue, it shall be entered in the terms in which it is found, and the court shall give judgment of acquittal. But no judgment of conviction can be given unless the jury find expressly against the defendant upon the issue."

Section 11266 N. C. L. 1929: No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court, to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

■■ There was no error in instructing the jury that it was not bound to use the identical forms of verdict handed it by the court when it first retired for deliberation. In the first place, the instruction was correct; in the second place, not only was the instruction not objected to, but it was expressly suggested and approved by the defense. The contention that the trial court, in giving that instruction, invited a verdict such as was first returned, is without merit. There was nothing in the question asked by the jury which would indicate that it was considering such a verdict.

■■ Appellant is in no position to complain of the

action of the trial court in not accepting the first verdict. State v. Lewis, 59 Nev. 262, 91 P.(2d) 820; 26 Am. Jur. 564, sec. 575; 30 C. J. 455, n. 90; 17 A. L. R. 1117, 1118 (top of first column, p. 1118). Under sec. 11019 N. C. L. 1929, it was proper for the court to direct the jury to reconsider its first verdict. Such action was favorable, not prejudicial, to defendant, because it gave the jury an opportunity, if it so desired, to fix the penalty at life imprisonment. Accused did not object or except to the court's action in refusing to accept this verdict. It was counsel's own suggestion that the jury be instructed that a recommendation of leniency is no part of a verdict and cannot be considered by the court. In State v. Stewart, 9 Nev. 120, 134, it was held that the recommendation of mercy constituted no part of the verdict, and should not have been recorded with it. Counsel assails this ruling as barbarous, inhumane, cruel and implacable. This criticism is wholly unwarranted, for the simple reason that when that case was decided, as well as when the crime there under consideration was committed, the only penalty for first degree murder was death, neither court nor jury having any discretion in the matter. That being so, it is perfectly clear that the recommendation for mercy, in the absence of statute, could not be considered by the court. In some states there are statutes expressly authorizing the jury in a murder case to accompany its verdict with a recommendation for mercy. But there is no such statute in Nevada, nor, so far as we are advised, has there ever been one.

■■ When the jury asked the court "to use the form whereby we don't have to stipulate the sentence of the defendant," the court should have given an instruction to the effect that such form could be used, but that if the jury should return a verdict of guilty of murder in the first degree without saying anything as to the punishment, then the court would be bound to inflict the death penalty. Such is the law in Nevada (State v. Russell,

47 Nev. 263, 271, 274, 220 P. 552, 222 P. 569), and such has been the law in California for more than fifty years. The jury should have been so instructed before first retiring for deliberation. But, though it was not so instructed, the jury was handed a form of verdict of first degree murder, with nothing "stipulated" as to the penalty, and at the same time was instructed that the court would have to inflict the death penalty if the jury should return a first degree verdict but fail to agree in fixing the penalty. This latter instruction was given after a conference of the trial judge and counsel. No objection was made to it, nor was any modification or other instruction asked by the defense. The jury had already been clearly instructed that it had the discretion to fix the penalty at life imprisonment, and one of the five forms of verdict first handed to the jury expressly fixed the penalty at confinement in the state prison for life. While it would have been more responsive to instruct the jury that if it returned a verdict of first degree murder without saying anything as to the punishment the court would be compelled to inflict the death penalty, we cannot, in view of what has been said, see how the failure to give such an instruction was prejudicial to the defendant.

The provision that "Every person convicted of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same" has been the subject of much controversy, not only in this state, but in the State of California from whose penal code the provision was adopted by the legislature of Nevada. The construction placed upon this provision by the supreme court of California in recent years differs from the interpretation which had been given it by that court at the time the provision was adopted by our legislature in the year 1907. 13 Cal. Jur. 746, sec. 110, n. 5.

In People v. Welch, 49 Cal. 174, 179, the court said, in part: "But the Act amending Section 190 of the

Penal Code does not give the general discretion which juries exercised under the Virginia statute. Here their discretion is limited, at most, to determining which of two punishments shall be inflicted; and we think that it is still more restricted, and is to be employed only where the jury is satisfied that the lighter penalty should be imposed."

Again, in the same opinion, the court, after referring to People v. Littlefield, 5 Cal. 355, used this language: "By parity of reasoning we may say, in view of the former punishment for the crime of murder of the first degree, and the history of legislation on the subject in this State and elsewhere, that it was the purpose of the Legislature (by the amendment of section 190) to permit the jury, in a case where the facts proved brought the crime of the defendant within the statutory definition of the higher offense, but they believed the punishment of death too severe, to declare that he should be imprisoned for life. We think, therefore, the statute should be construed as if it read: 'Shall suffer death, or (in the discretion of the jury) imprisonment in the State prison for life.' "

On petition for rehearing, in People v. Welch, supra, the court (49 Cal. at 185) further said: "It results from the construction we have given to section 190 of the Penal Code (as amended) that a jury may—in the exercise of its discretion—declare that a defendant guilty of murder of the first degree shall be punished by confinement in the State Prison for life. If a jury shall agree that a defendant is guilty of murder of the first degree, but cannot agree that the punishment shall be imprisonment for life, or shall not declare that the punishment shall be such imprisonment, it will be the duty of the Court to pronounce judgment of death. The jury need not declare that death shall be inflicted—in cases where they cannot agree on imprisonment—since, if the verdict is silent in respect to the penalty, the Court must sentence the defendant to death."

The rule laid down in People v. Welch, supra, was followed in People v. French, Cal. Sup., 7 P. 822, rehearing, 69 Cal. 169, 10 P. 378, 384. On the rehearing the court, in concluding its opinion, said: "In other words, a person convicted of murder in the first degree shall not escape punishment because the jury that convicted him by a valid verdict may have disagreed upon the question of punishment, or, which is equivalent to the same thing, returned a verdict which was silent as to the penalty." More than thirty-five years after People v. Welch, supra, and several years after the provision under discussion was adopted in Nevada, we still find the supreme court of California, in People v. Luis, 158 Cal. 185, 110 P. 580, 583, saying that: "Section 190, Pen. Code, makes death the punishment for murder in the first degree, but give the jury the power, in its discretion, to substitute life imprisonment therefor. People v. Welch, 49 Cal. [174], 178; People v. French, 69 Cal. [169], 176, 10 P. 378." See also People v. Rollins, 179 Cal. 793, 179 P. 209. And it was more than fifty years after People v. Welch and People v. French before that court announced a different rule in People v. Hall, 199 Cal. 451, 249 P. 859, and in subsequent decisions.

■ This court is not absolutely bound by either the earlier or more recent decisions of the supreme court of California construing said provision. But in this state, as well as by the great weight of authority, it is the general rule that a statute adopted from another state will be presumed to have been adopted with the construction placed upon it by the courts of that state before its adoption. McLane v. Abrams, 2 Nev. 199, 206, 207; State v. Robey, 8 Nev. 312, 320, 321; O'Brien v. Commissioners, 41 Nev. 90, 101, 102, 104, 167 P. 1007; In re Walker River Irr. Dist., 44 Nev. 321, 332, 195 P. 327; Menteberry v. Giacometto, 51 Nev. 7, 14, 267 P. 49; Hard v. Depaoli, 56 Nev. 19, 30, 41 P. (2d) 1054; Minden B. M. Co. v. District Court, 57 Nev. 29, 33, 56 P. (2d) 1209; Johnson v. Garner, D. C., 233 F. 756,

765; Lewis' Sutherland, Statutory Construction, 2d Ed., sec. 404, pp. 783–786; Crawford, Statutory Construction, sec. 235, p. 444; 59 C. J. pp. 1065–1069, sec. 627, p. 1072, sec. 629; 25 R. C. L., 1069, sec. 294. Upon the basis of these authorities we are of the opinion that the rules laid down in the early California cases hereinbefore cited should prevail in this state until such time as our legislature may see fit to change them.

■ Appellant urges that when the verdict recommending leniency was returned, it was the trial court's duty to inquire and ascertain what was meant and intended by that verdict, and to assist the jury in preparing an acceptable form of verdict which would clearly express the jury's intent. He claims that instead of doing this the court, by contradictory instructions, confused and misled the jury, and compelled it to render a verdict contradicting the meaning, purpose, and intent of the original verdict. While, as we have said, one of the instructions could and should have been more responsive than it was to the jury's inquiry, we do not think that any of the instructions complained of were either contradictory or contrary to law. In the original instructions, handed to the jury when first retiring for deliberation, that body was told, more than once, in clear and unmistakable language, that it could, in its discretion, fix the punishment at life imprisonment if it should return a verdict of murder in the first degree. No other instruction was given at any time which in any respect conflicted with that original instruction.

When the first verdict was returned, the trial court did not accept it, order it recorded and proceed to sentence the defendant to death, as was done in Smith v. State, 75 Miss. 542, 23 So. 260. On the contrary it declined to accept the verdict, and defendant's own counsel expressly suggested that the jury be advised that a recommendation of leniency is no part of a verdict and *could not be considered by the court*. The court thereupon stated that such was the law, and directed the jury to retire for further deliberation. It had

already been made clear to the jury that it had the right to relieve defendant from the death penalty, and an appropriate form of verdict had been placed in its hands to be used in the event the jury should decide to fix the penalty at life imprisonment. The jury had also been instructed after a conference with both counsel, that the court would have to sentence the defendant to death if the jury found him guilty of murder of the first degree and failed to agree on the penalty. This instruction does not accord with recent California decisions, but is, in our opinion, the law of this state, for reasons hereinbefore stated.

The record indicates that the law was stated with sufficient clarity to satisfy counsel for the accused, who made no objection to any written instruction given or any oral statement made by the court, and whose every suggestion regarding the law to be given the jury was adopted by the court. The action of the jury in this case is inexplicable; but we can find nothing in the record to indicate that it did not understand what it was doing when the second verdict was returned. On the contrary, that verdict indicates that the jury decided not to fix the lighter penalty, or was unable to agree on the penalty.

The seventh assignment of error is based chiefly upon appellant's contention that the instructions complained of were erroneous and contradictory. In our opinion they were neither. The record clearly shows that when the jury returned the first verdict, the trial court, the district attorney, and the attorney for defendant all were fully aware that the words recommending leniency constituted no part of the verdict, and in no wise qualified its legal effect. State v. Lewis, supra. The jury was so informed, pursuant to the express suggestion of defense counsel. It was clearly the purpose of the court to make this plain to the jury and, by directing it to retire for further deliberation, to afford it full opportunity to fix the penalty at life imprisonment or to return such other verdict as would clearly show its real

intent. If we could agree with appellant that the jury was confused and misled, and "gave up in despair," and that, though not wishing to bring in a verdict requiring the death penalty, it was compelled to do so by erroneous, contradictory and unresponsive instructions, it would obviously be the duty of this court to set the judgment aside. But the record, in our opinion, does not support counsel's contention, and, as already stated, we are confirmed in this view not only by reason of the fact that defendant's attorney was evidently not in anywise confused, but by the further fact that in instructing the jury the trial court acceded to every suggestion made by him.

The eleventh assignment of error is without merit, because the jury did not *persist* in bringing in any formal verdict. The second verdict was not informal in any sense of the word, and the bringing in of the only other verdict, the first one, was certainly not *persisting* in finding an informal verdict. People v. Throop, 277 Ill. App. 1, 5, 6; 48 C. J. 1037; and leading English dictionaries.

What has been said sufficiently covers all assignments of error except the thirteenth. Counsel is correct in stating that the court will take judicial notice of the fact that the state prison of Nevada is not situated within the city limits of Carson City. The court will also judicially notice that Nevada has but one state prison and but one Carson City, and that the state prison is located approximately one mile from the city limits of said Carson City, which is the capital city of Nevada and the county seat of Ormsby County, within the boundaries of which it is situated. 20 Am. Jur. 77, 101, secs. 53, 82.

In Howell v. State, 164 Ga. 204, 138 S. E. 206, 209, the defendant had been sentenced to be executed within the walls of the penitentiary at Milledgeville, Georgia. The defendant moved to set aside the sentence upon the ground, among others, that there was

no state penitentiary at Milledgeville, Georgia. The supreme court of that state, in its opinion, said: "This brings us to decide whether the state has a penitentiary at Milledgeville. The word 'at,' as used in this statute, does not mean within the corporate limits of the city of Milledgeville. As used in this statute, it is the equivalent of the word 'near.' * * * So the word 'at,' as used in the first section of this act, means 'near'; and if the state has a penitentiary near Milledgeville, such penitentiary falls within the meaning of this section." See also Board of Trustees of Albany College v. Monteith, 64 Or. 356, 130 P. 633, 636; Old Ladies' Home of Muscatine v. Hoffman, 117 Iowa 716, 89 N. W. 1066; Rogers v. Galloway Female College, 64 Ark. 627, 44 S. W. 454, 455, 39 L. R. A. 636. We hold that the state prison of Nevada is "at Carson City" within the meaning of that expression as used in the death warrant.

Finding no prejudicial error in the record, the judgment appealed from is affirmed, and the district court is directed to make a proper order for the carrying into effect, by the warden of the state prison, of said judgment.