In the Matter of the Application of PAUL MAY-NARD SKAUG for a Writ of Habeas Corpus.

No. 3449

December 28, 1945.                    164 P. 2d 743.

*Martin J. Scanlan,* of Reno, for Petitioner.

*Alan Bible,* Attorney General, *George P. Annand* and *Homer Mooney,* Deputy Attorneys General, of Carson City, and *Melvin E. Jepson,* District Attorney, of Reno, for Respondent.

## OPINION

*Per Curiam:*

On the 18th day of October 1944 an information was filed in the Second judicial district court, in and for the county of Washoe, charging petitioner with the crime of murder in the first degree. On the 19th day of October 1944 the time set for arraignment, the petitioner appeared, and upon being informed by the court of his right to counsel before being arraigned, said that he did not think it was any use to appoint an attorney to represent him, but the court, bearing in mind the nature of the charge in the information, appointed Martin J. Scanlan, Esq., a member of the bar of Washoe County, Nevada, to represent petitioner, and on motion of the

said attorney it was ordered that the arraignment be continued until October 20, 1944, at 11 o'clock a. m.; petitioner, with his said attorney, appeared for arraignment on the 20th day of October 1944, and the arraignment was duly had, whereupon his said attorney requested that November 6, 1944, at 10 : 30 o'clock a. m., be set as the time for petitioner to enter his plea; on the 6th day of November 1944, petitioner, with his said attorney, appeared in said court at the time appointed for petitioner's plea, and in response to the question as to whether petitioner was ready to enter his plea, petitioner remained mute and did not answer; thereupon the said attorney for petitioner stated that his client remained mute and would not plead; the court, therefore, ordered that a plea of not guilty be entered, which was done.

On stipulation of counsel for the respective parties, it was ordered that the trial of petitioner upon such information be set for December 13, 1944, at 10 o'clock a. m. On said last-mentioned date the trial of the petitioner commenced at the appointed time, and was concluded on December 15, 1944, and submitted to the jury; on the said 15th day of December 1944 the jury returned into court with their verdict, in words and figures as follows:

"No. 85808                                          Dept. No. 1.
"In the Second Judicial District Court of the State of
        Nevada, in and for the County of Washoe.
"The State of Nevada,
                        Plaintiff,
        vs.
Paul Skaug, alias
Paul Masterson,
                        Defendant."
                        "Verdict
    "We, the jury in the above entitled action, do find the defendant guilty of murder in the first degree.
    "Dated: this 15th day of December, 1944."
                        "Lester McCurry,
                                "Foreman."

The petitioner then asked that the jury be polled, which was done, and each juror, for himself and not one for the other, answered, "Yes," in response to the inquiry, "Is that your verdict?"

The petitioner thereupon waived the statutory time for pronouncing judgment, and consented that judgment might be rendered and sentence imposed on December 16, 1944, at 11:30 a.m. At the said appointed time the petitioner, with his attorney, Martin J. Scanlan, Esq., appeared for the pronouncement of judgment and the imposition of sentence; upon the petitioner having stated that he had no just or legal cause to show why judgment should not be rendered, and stating that he consented that he be sentenced at that time, the court proceeded to pronounce judgment, and impose sentence of death upon the petitioner, as follows: "Therefore, it is the judgment of this court, pursuant to the statute is such cases made and provided, that for the crime of murder in the first degree of which you have been found guilty, you suffer the death penalty by means of the administration to you of lethal gas by the Warden of the State Prison of Nevada, within the limits of said prison near Carson City, Nevada. The date of your execution is to be fixed by a warrant to be executed and signed by me and to occur during a week not less than sixty days or more than ninety days from this date, and the sheriff of Washoe County is hereby directed to deliver you to some authorized person to be designated by the Warden of said prison to receive you, as is required by law, to the end that judgment and sentence of this court is fully executed. You will now be remanded to the custody of the sheriff for the execution of this sentence."

On said 16th day of December 1944 a warrant of execution was duly issued by said court, by which the warden of the state prison of the State of Nevada was duly ordered to execute said judgment and sentence by the execution of petitioner by the administration to him of lethal gas within the limits of the state prison of Nevada, in Ormsby County, State of Nevada, some time

during the week commencing Sunday the 11th day of March 1945 and ending Saturday the 17th day of March 1945.

From the judgment of the trial court, the petitioner appealed to this court, whereupon this court made an order suspending the execution of said judgment and sentence until the determination of said appeal; on the 5th day of September, 1945, this court filed its opinion affirming the judgment of the trial court, and directing the district court to make the proper order for the carrying into effect, by the warden of the State prison, the judgment rendered. State v. Skaug, 63 Nev. 59, 161 P. 2d 708.

On the 1st day of October 1945 petitioner filed in this court a petition for a rehearing, and on November 5, 1945, the state filed its answer to said petition, and on the 15th day of November 1945 this court filed its opinion and order denying a rehearing in said case. 63 Nev. 72, 163 P. 2d 130.

The trial court, pursuant to the above - mentioned directive of this court, on the 10th day of December 1945 again sentenced the petitioner to death by lethal gas, and a warrant of execution was issued accordingly to the warden of the Nevada state prison, authorizing said warden to execute petitioner on the 4th day of January 1946 by the administration of lethal gas.

The petitioner, on the 17th day of December 1945, filed in this court a petition for a writ of habeas corpus, upon the alleged grounds, "that the trial court, to-wit, the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, was without jurisdiction, or exceeded its jurisdiction, in pronouncing and entering its judgment and sentencing petitioner to death, and said court was without jurisdiction to issue its warrant of execution to the warden of said prison to execute said judgment and sentence by executing petitioner by lethal gas within the limits of said prison; * * * that there is no statutory law or provision of the Constitution of the State of Nevada which gives a

trial court jurisdiction or power to pronounce a judgment and sentence of death upon a defendant who is found guilty of murder in the first degree, and the jury duly impaneled and sworn in said cause fails, or is unable by disagreement, to exercise its discretion and to determine or fix the penalty for said crime of murder in the first degree at death, or confinement in the state prison for life"; that it was the exclusive function and discretion of the jury to fix the punishment at death, or confinement in the State Prison for life, and that "the trial court was without jurisdiction to fix the penalty at death, when the jury disagreed as to the punishment, and thereby usurped the exclusive function of the jury to exercise its discretion in determining the penalty."

The petitioner further asserts that he has been denied a trial by jury, in a capital case, within the contemplation and meaning of sec. 3, art. I of the constitution of the State of Nevada; that he may be deprived of his life without due process of law, in violation of sec. 8, art. I, of the constitution of the State of Nevada; and that the said judgment and sentence of death are in violation of the fifth and fourteenth amendments of the constitution of the United States, by depriving petitioner of his liberty, and such judgment and sentence, if carried into effect, will deprive the petitioner of his life without due process of law, and that the petitioner is unlawfully imprisoned, detained and restrained of his liberty by Richard Sheehy, warden of the Nevada state prison, in Ormsby County, Nevada.

An alternative writ was issued on said 17th day of December 1945, to which, on December 21, 1945, respondent, as warden of the state prison, filed his return and his response to said petition; on said 21st day of December 1945 petitioner filed a supplement to his petition, and, on said last-mentioned date, the respondent filed his memorandum of points and authorities. On the said 21st day of December 1945 a full hearing was had, during all of which petitioner, with his attorney, Martin J. Scanlan, Esq., was present, the petitioner's body having

been produced in this court by the said warden, pursuant to the said writ; the original warrant of execution was then produced and exhibited to this court; and the controversial matters involved were then argued by respective counsel, whereupon the matter was submitted to this court for decision.

The contention of the petitioner that he was denied due process of law and that, within constitutional contemplation, he was denied a trial by jury, because the trial judge fixed the penalty without any jurisdiction so to do, or in excess of the trial court's jurisdiction, is based upon the contention that, under the provisions of section 10068, Nevada Compiled Laws 1929, vol. 5, the function right and power to fix the punishment in cases in which first degree murder is charged is conferred exclusively upon the jury, where a defendant is found guilty upon trial by jury.

The part of said sec. 10068 upon which petitioner's contention is based is as follows: "Every person convicted of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same; * * *."

This court has repeatedly been required to construe that statute, and has upon several past occasions given expression to what we believe to be the proper interpretation.

In Ex parte Kramer, 61 Nev. 174, 122 P. 2d 862, in which, on behalf of the petitioner, similar grounds for the discharge of the said petitioner, Kramer, were asserted, as in the instant case, this court stated, on page 181 of 61 Nev., on page 865 of 122 P. 2d: "We are convinced that when the statutory provision in question was adopted from California, it was the intention of the Nevada legislature that the statute should be construed in accordance with the views expressed in the early decisions of the California supreme court discussed in Kramer v. State, supra [60 Nev. 262, 108 P. 2d 304]."

■ It is a principle of statutory construction too well settled and too generally applied to require further

extended discussion here, especially in view of our treatment of it in previous decisions involving the same question, that a state which adopts the provisions of a statute of another state, adopts not only the text of that statute, but also the construction placed upon it by the highest court of the state from which it is adopted. This court has frequently expressed its adherence to that principle. Some of the cases in which we have done so, and which are cited in the opinion in Kramer v. State, 60 Nev. 262, on pages 275 and 276, 108 P. 2d 304, are: McLane v. Abrams, 2 Nev. 199, 206, 207; State v. Robey, 8 Nev. 312, 320, 321; O'Brien v. Board of Commissioners, 41 Nev. 90, 101, 102, 104, 167 P. 1007; In re Walker River Irr. Dist., 44 Nev. 321, 332, 195 P. 327; Menteberry v. Giacometto, 51 Nev. 7, 14, 267 P. 49; Hard v. Depaoli, 56 Nev. 19, 30, 41 P. 2d 1054; Minden Butter Mfg. Co. v. First Judicial District Court, 57 Nev. 29, 33, 56 P. 2d 1209.

In the said opinion in Kramer v. State, supra, immediately after the citation of the above authorities, we expressed our view as follows [60 Nev. 262, 108 P. 2d 310]: "Upon the basis of these authorities we are of the opinion that the rules laid down in the early California cases hereinbefore cited should prevail in this state until such time as our legislature may see fit to change them."

■■ We still believe that position is sound. It was undoubtedly the clear intention of the Nevada legislature, at the time of the adoption of that statute, that the then prevailing interpretation of the statute by the supreme court of California, in defining the scope and extent of the discretion of the jury, in fixing the punishment of a defendant convicted by such jury of murder in the first degree, should be the law of Nevada in the interpretation of the statute in this state. Such being the legislative intent, this court, if, without legislative sanction, we resorted to some other interpretation, would be guilty of judicially usurping the functions and authority vested exclusively in the legislature. We have no desire to indulge in judicial legislation, neither have we the constitutional right so to do.

We have, in State v. Russell, 47 Nev. 263, 271, 220 P. 552, 222 P. 569, in Kramer v. State, supra, in Ex parte Kramer, supra, and in the opinion in the instant case, so fully set forth and explained the interpretation of the California statute in the early California cases that it will serve no good purpose to repeat herein, at length, our analysis and discussion of those early California cases.

Typical of the interpretation of the California statute upon the point in question in the instant case, and which was involved in the case of People v. Welch, 49 Cal. 174, 179, is the expression in the opinion in the latter case (and which we quoted in Kramer v. State, 60 Nev. on pages 273 and 274, 108 P. 2d on page 309, supra), as follows: "But the Act amending section 190 of the Penal Code does not give the general discretion which juries exercised under the Virginia statute. Here their discretion is limited, at most, to determining which of two punishments shall be inflicted; and we think that it is still more restricted, and is to be employed only where the jury is satisfied that the lighter penalty should be imposed.

Again, in the same opinion, the court, after referring to People v. Littlefield, 5 Cal. 355, uses this language: "By parity of reasoning we may say, in view of the former punishment for the crime of murder of the first degree, and the history of legislation on the subject in this State and elsewhere, that it was the purpose of the legislature (by the amendment of section 190) to permit the jury, in a case where the facts proved brought the crime of the defendant within the statutory definition of the higher offense, but they believed the punishment of death too severe, to declare that he should be imprisoned for life. We think, therefore, the statute should be construed as if it read: 'Shall suffer death, or (in the discretion of the jury) imprisonment in the state prison for life.'"

The case of People v. Welch was decided in 1874, the year following the adoption by the California legislature, in 1873, of the provision conferring certain discretion

upon the jury in first degree murder cases. This was more than thirty years before Nevada adopted that statute, in 1907, and the California supreme court adhered to that interpretation, at least, until after the decision in People v. Rollins, 179 Cal. 793, 179 P. 209, decided in 1919, about twelve years subsequent to the date of Nevada's adoption of the statute.

In People v. Luis, 158 Cal. 185, 110 P. 580, 583, decided in 1910, the supreme court of California said: "Section 190, Pen. Code, makes death the punishment for murder in the first degree, but gives the jury the power, in its discretion, to substitute life imprisonment therefor."

And in People v. Rollins, supra [179 Cal. 793, 179 P. 210], the same court said: "Murder in the first degree is punishable by death unless the jury sees fit to affirmatively assess the penalty at imprisonment for life."

In the California case of People v. French, Cal. Sup., 7 P. 822, in the opinion on rehearing, 69 Cal. 169, 10 P. 378, 384, decided in 1886, it is stated: "In other words, a person convicted of murder in the first degree shall not escape punishment because the jury that convicted him by a valid verdict may have disagreed upon the question of punishment, or, which is equivalent to the same thing, returned a verdict which was silent as to the penalty."

This quotation from People v. French, supra, is incorporated in this court's opinion in Kramer v. State, supra, 60 Nev. on page 275, 108 P. 2d 304, and, in that connection, People v. Luis, supra, and People v. Rollins, supra, are therein cited as being clearly expressive of the interpretation by the California supreme court of the provision in question.

The district courts of Nevada, in instructing juries, in first degree murder cases, have consistently and quite generally followed the interpretation of the early California cases. They did so even long prior to our decision upon the petition for a writ of prohibition in the case of State v. Russell, decided in 1923. A typical example of such instructions of our district courts, after Nevada

adopted the California statutory provision in question in 1907, are the instructions which were given in each of four first degree murder cases tried in the Fourth judicial district court, in and for the county of Elko, in 1908 and 1909, and upon the trials of which Judge George S. Brown, a very learned and able district judge, who had made a special study of the matter, presided. Those cases were: State v. Dolan, Fourth District Court, Elko County, file No. 377; State v. Scott, Fourth District Court, Elko County, file No. 375; State v. McGowan, Fourth District Court, Elko County, file No. 380; and State v. Hay, Fourth District Court, Elko County, file No. 415. In the Hay case, which is a fair example of the instructions, the court instructed the jury upon the proposition in question, as follows:

"In one respect only, have you any real discretion as to your verdict. Should the verdict of the jury convict the defendant of murder of the first degree, the law permits the jury to award the penalty. This may be death or imprisonment for life. A verdict of murder of the first degree will require the imposition of a sentence of death unless the jury by their verdict fix the penalty at life imprisonment.

"If you find the defendant guilty of murder of the first degree and believe her punishment should be confinement in the State Prison for life, you may say in your verdict.

" 'We, the jury empaneled in the above entitled action find the defendant, Florence O. Hay, guilty of murder of the first degree and fix her punishment at life imprisonment.'

"If you find the defendant guilty of murder of the first degree, and believe that she should suffer the death penalty, or if you are unwilling to exercise your discretion, your verdict may be:

" 'We, the jury empaneled in the above entitled action find the defendant, Florence O. Hay, guilty of murder of the first degree.'

"If you find the defendant guilty of murder of the second degree, your verdict may be:

" 'We, the jury empaneled in the above entitled action, find the defendant, Florence O. Hay, guilty of murder of the second degree.'

"If you find the defendant not guilty, you may say in your verdict:

" 'We, the jury empaneled in the above entitled action find the defendant, Florence O. Hay, not guilty.' "

In State v. Russell, supra, in the opinion in the proceeding wherein Russell, who had been convicted of murder in the first degree, sought a writ of prohibition to restrain the trial court from issuing a warrant of execution, upon the ground that the jury before whom petitioner was tried "did not fix the death penalty, or any penalty, and that the judgment of the court so fixing it is void, since there can be no such penalty adjudged by the court until the jury has by its verdict fixed it at death," this court stated:

"The authorities are divided upon the proposition presented, but, in view of the fact that our statute is identical with the California statute, from which it was probably taken, we are of opinion that we should follow the interpretation placed upon the statute of that state long before our statute was adopted, wherein it was held that a verdict identical with the one in this case, under an instruction similar to the one complained of, was valid.

"For this reason we deny the writ."

In the instant case, at the time the verdict was returned into court by the jury, the following occurred:

The Court: "Have the jury agreed upon a verdict?"

Foreman Curry: "We have, Your Honor."

The Court: "Will you kindly state the verdict?"

Foreman Curry: "We find the defendant guilty of murder in the first degree. We are unable to agree upon a recommendation."

██ Unless by statute a recommendation has been accorded some legal effect, it possesses none. Under our

law in Nevada, the punishment for first degree murder is death, or, in the discretion of the jury trying the same, imprisonment for life. In cases where the jury is unable to agree upon a penalty, or fails to say anything as to punishment, in their verdict, the court, under the uniform interpretation of our statute since the same was adopted, is required, as a matter of law, to impose the death penalty. As to this, the trial court has no discretion, in a case tried by jury, and in which the defendant has been found guilty of murder in the first degree.

■ It necessarily follows that any recommendation, for instance, a recommendation for mercy or leniency, in such a case, is futile, and can have no effect. If the jurors, therefore, in the instant case, or some of them, were considering such a recommendation, and failed to agree upon it, such failure, or the lack of any such recommendation, could not have deprived the defendant of any right. Any such action on the part of the jury could have had no legal effect upon the court in pronouncing judgment and imposing sentence. Such inability to agree upon a recommendation was entirely immaterial. State v. Stewart, 9 Nev. 120, 134; Kramer v. State, supra. In the latter case, on page 272 of the opinion in 60 Nev., on page 308 of 108 P. 2d, this court stated: "In State v. Stewart, 9 Nev. 120, 134, it was held that the recommendation of mercy constituted no part of the verdict, and should not have been recorded with it. Counsel assails this ruling as barbarous, inhuman, and cruel and implacable. This criticism is wholly unwarranted, for the simple reason that when that case was decided, as well as when the crime there under consideration was committed, the only penalty for first degree murder was death, neither court nor jury having any discretion in the matter. That being so, it is perfectly clear that the recommendation for mercy, in the absence of statute, could not be considered by the court. In some states there are statutes expressly authorizing the jury in a murder case to accompany its verdict with

a recommendation for mercy. But there is no such statute in Nevada, nor, so far as we are advised, has there ever been one."

If the jury in the instant case, in which their foreman orally reported their inability to agree upon a recommendation, meant that they were unable to agree upon or fix the punishment, as counsel for the petitioner in his petition for habeas corpus, and in his opening brief upon appeal, indicated they may have meant, it is insisted by petitioner that such disagreement, or the failure of the jury to exercise its discretion and to determine or fix the penalty, rendered the verdict void; that the discretion to do so is exclusively the function of the jury, and upon such failure of the jury so to do, the court had no jurisdiction to impose the death penalty.

This theory of the petitioner is entirely contrary to the law of Nevada upon the subject. Such law, as we conceive it to be, is clearly stated in State v. Russell, supra, in State v. Kramer, supra, in Ex parte Kramer, supra, and in this court's opinion on appeal in the instant case.

■ This court, in construing the portion of said statute, section 10068, N. C. L. 1929, vol. 5, involved in the instant proceeding, has not been unmindful of the factor of the punctuation of the provision in question. In fact, this court, in the Russell and Kramer cases and in the instant case, has given full consideration to it. In that connection we feel free to state, that were the element of grammatical construction and punctuation of the provision alone involved, we would be able to discern, and perhaps agree with, the interpretation so earnestly presented by counsel for the petitioner. There is, however, very much more involved. We feel certain, from our study of the early California cases, that the judges in those cases felt fully justified, from their knowledge of the historical background, in that state, of the law as to punishment for murder in the first degree, and from their conception of public policy (which to us seems most sound), in disregarding the punctuation of that provision to the extent of disregarding the position of the

comma which occurs immediately after the word "life," and before the phrase "at the discretion of the jury trying the same" (both in the California statute, Pen. Code, sec. 190, and in the Nevada statute). According to the great weight of authority, under such circumstances the courts even have the right to consider a phrase transposed and to supply suitable punctuation, in order to accomplish the evident purpose and intent of the legislature.

In Sutherland on Statutory Construction, 3d ed., vol. 2, sec. 4939, p. 477, the learned author had stated: "The better rule is that punctuation is a part of the act and that it may be considered in the interpretation of the act but may not be used to create doubt or to distort or defeat the intention of the legislature. When the intent is uncertain, punctuation, if it affords some indication of the true intention, may be looked to as an aid. In such a case the punctuation may be disregarded, transposed, or the act may be repunctuated, if the act as originally punctuated does not reflect the true legislative purpose."

And in Crawford on Statutory Construction, sec. 199, p. 342, the principle is very aptly set forth in the following language: "Of course, the punctuation of a statute may lend some assistance in its construction, but when the intention of the statute and the punctuation thereof are in conflict, the former must control, even where the punctuation is regarded as a part of the statute. In other words, the punctuation will not control the plain meaning of the text of an enactment. It is subordinate to the text, and the retention of a word is of far more importance than the position of a comma. Indeed, the court may punctuate, or disregard existing punctuation, or repunctuate in order to give the legislative intention effect. * * *."

There was good reason of the most impelling character why the California supreme court construed the statute as it did in the early cases. The punishment there for murder in the first degree, from the inception of statehood, and, indeed, from the beginning of territorial

government, had been death. No discretion was conferred upon the courts, or upon any other tribunal, or upon any authority, to alter or change that penalty. Upon conviction of murder in the first degree, the punishment was, therefore, certain and sure. To confer general discretion upon the court or upon any other tribunal or authority, would have been to create uncertainty and would have been most unwise. Even more unwise would it have been to confer exclusive discretion upon a body of twelve persons, requiring them affirmatively to agree upon the punishment, as between death and life imprisonment, and to return their verdict either expressly or impliedly fixing the penalty as one or the other, before same could be imposed. In cases in which the jury failed to agree upon the punishment or for any other reason, or without reason, failed to exercise their discretion, the court, under such an interpretation, recognizing exclusive discretion in the jury, would have been powerless to impose the sentence of death, even though the jury had failed to exercise its discretion to fix the punishment at life imprisonment. We believe the supreme court of California and this court have heretofore decided correctly in disregarding the punctuation of the statute to the extent of treating the discretion of the jury as being special, and limited to the substitution of life imprisonment for the death penalty, in cases in which they deemed the punishment of death too severe. The only possible alternative construction would constitute such a drastic departure from sound principle and lead to such unwholesome, and, in some cases, sinister results, amounting to miscarriage of justice, that it should not be indulged, unless the legislature, in clear and unequivocal language, manifests the intent so to do.

The interpretation of the statute, in accordance with the early California cases, so generally followed in Nevada, by our courts and by the legal profession, and so consistently adhered to by this court, has become firmly established in the law of this state, by the presumed intention of the legislature at the time of its adoption, and by consistent usage and application by our

courts, and for this court to change it without action by the legislature would be a flagrant usurpation, by the judiciary, of a purely legislative power. We respect the clear division of powers provided by our constitution, as between the legislative, the executive and the judicial departments of the state government, and we can discern no valid reason why, in the instant case, we should exceed, or disregard, the proper constitutional limitation upon our authority. To interpret the statute in accordance with the contention of the petitioner would make us guilty of creating judicial legislation.

■ There is further just reason why we should do all possible in interpreting the statute in question, being, as it is, a law far reaching in its consequences, as not to create uncertainty, or instability in the consistency of its application and administration. The statute should be interpreted, applied and administered fairly, impartially and without discrimination. For us to interpret the statute as petitioner's counsel indicates we should would be a confession on our part of fatal error in all the past decisions of this court interpreting such statute. The inevitable conclusion would be that this court had sanctioned the condemnation to death of Russell and Kramer upon judgments void because based upon verdicts so irregular, insufficient and incomplete as to amount to no legal basis for the judgments rendered.

We will conclude this opinion by reaffirming what this court said in the opinion on appeal in the instant case, which was, in part, as follows: "As observed in Kramer v. State, supra, if there is to be a different rule in this state it must be established by the legislature. It would be indeed a melancholy reflection on the administration of justice in this jurisdiction if Kramer and Loveless had been done to death on a void verdict. It was to avert the happening of such a mournful event that the judgment in the case of State v. Loveless was reversed on the first appeal. 62 Nev. 17, 136 P. 2d 236. It was affirmed on the second appeal. 62 Nev. 317, 150 P. 2d 1015. Happily, for the repose of the judicial conscience,

118

justice did not miscarry in the former case or in the latter on the second trial."

It is our firm conviction, after carefully considering all phases of the matter, that the conclusion we have reached and above indicated in the instant proceeding will result in no miscarriage of justice as to the petitioner.

This proceeding is hereby dismissed, and petitioner is remanded to the custody of the warden of the state prison.