THE STATE OF NEVADA, RESPONDENT, *v.* KENNETH L. ELGES, APPELLANT.

No. 3693

December 29, 1952.                    251 P.2d 590.

*Morgan Anglim,* and *Griswold & Vargas,* of Reno, for Appellant.

*Jack Streeter,* District Attorney, Washoe County, Reno, for Respondent.

## OPINION

By the Court, MERRILL, J.:

Defendant Elges, a duly licensed physician and surgeon of Reno, Nevada, following jury trial, was found and adjudged guilty of the crime of abortion by means of an instrument. From that judgment and from order denying new trial this appeal is taken.

The crime is defined by sec. 10129, N.C.L.1929, as follows: "Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to preserve her life or that of the child whereof she is pregnant, shall—* * * Use, or cause to be used, any instrument or other means; Shall be guilty of abortion, * * *."

One Golding, an alleged contact man for defendant Elges, was originally named as codefendant and such was his status throughout the trial. Upon submission of the state's case, he changed his plea to guilty and was subsequently sentenced upon that plea. The court in instructing the jury charged it not to consider testimony as to conversations had by witnesses with Golding or evidence as to his actions.

No evidence was presented by defendant Elges, the case going to the jury upon the evidence presented by the state alone. Defendant's first contention is that that evidence was insufficient to warrant a verdict of guilty and that the court erred in refusing his request for a directed verdict of acquittal. In this regard he asserts, first, that the state did not prove the use of an instrument and, second, that there was not sufficient corroboration under the requirement of sec. 10975, N.C.L.1929 that "the defendant shall not be convicted upon the testimony of the woman upon * * * whom the offense

shall have been committed unless she is corroborated by other evidence."

The woman upon whom the offense was committed, whom we shall call by her given name, Juanita, testified as follows: In May, 1950, she was residing in the bay area of California. She was married and had three children. Domestic difficulties had been encountered and she was contemplating a divorce. (By the time of trial the parties had been divorced.) She became pregnant and felt that under the circumstances she simply could not afford a fourth child. On May 17, 1950, she went with her husband to Daly City, California, where she met Golding. On May 19, 1950, she flew to Reno and called at defendant's office. In the reception room were two other women who had flown to Reno on the same plane with her. When she was called she entered defendant's office, paid him a fee of $350 and submitted to the operation at his hands. Just prior to the performing of the operation she saw an instrument in the hands of defendant, describing it as from 8 to 10 inches long, smaller around than an ordinary pencil and with a "sort of hook at the end." During the operation she felt extreme pain in her abdomen. That night she returned to her home in California, after which she experienced hemorrhaging, general weakness and fainting spells, increasing in frequency. On May 26, 1950, she consulted her family physician, was hospitalized, and a curettement was performed.

In corroboration, the doctor who had performed the curettement testified. Prior to May 19, 1950, he had examined Juanita, finding her pregnant but otherwise in excellent health. There was no indication that continuing pregnancy or normal birth of a child would endanger her health. On May 26, 1950, he examined her, finding her an extremely sick person. She was hospitalized immediately and he performed a curettement, finding "that she had a marked amount of placental tissue in the uterus with remnants of the fetus remaining, the baby that had been partially dismem-

bered"; that she had severe pelvic peritonitis secondary to an induced abortion brought about "by instrumentation in the uterus." In answer to an inquiry whether in his opinion "she was aborted by the use of some foreign instrumentation being inserted in her uterus" he replied "Yes."

Juanita's husband testified to the trip to Daly City on May 17 and to meeting Golding at that time; to driving Juanita to the airport on May 19; to furnishing her with $350 for the operation. He further testified: after Juanita returned to her home "she was hemorrhaging and passing blood clots and couldn't stand up and she was in pain a lot, and I got scared and called our family doctor and told him what had taken place and he said to get her to the South San Francisco hospital right away and he would meet us there."

One of the two women seen by Juanita in defendant's reception room testified corroborating Juanita's presence in defendant's office on May 19, 1950.

Nothing can be clearer, in our view, than that Juanita's testimony was amply corroborated within the requirements of our statute; that the corroboration tended to connect the defendant with the offense; that the testimony of Juanita and of the doctor supplied evidence of instrumentation; that the court was not in error in refusing to direct a verdict for the defendant.

The state did not choose to stand upon the testimony outlined, however. It proceeded to present testimony of six other women (one of whom was the witness present in the reception room with Juanita), all of whom testified to having made the Daly City contact with Golding and the trip to Reno and to receiving an abortion operation at the hands of defendant. With reference to this testimony the court instructed the jury as follows:

"Such evidence was received for a limited purpose only; not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty

of the crime charged against him. in the indictment. You are not permitted to consider that evidence for any other purpose, * * *. The value, if any, of such evidence depends on whether or not it tends to show that the defendant entertained the intent which is a necessary element of the alleged crime for which he is now on trial * * *." State v. Vertrees, 33 Nev. 509, 112 P. 42.

Defendant contends that, notwithstanding the court's instruction, this testimony was improperly admitted and was highly prejudicial; that its admission accordingly was reversible error.

The question of the admissibility of such testimony in such a case as this has frequently had the consideration of the courts. Generally it may be stated that in cases of abortion the courts are in substantial agreement that evidence of other offenses is competent and relevant upon the issue of the defendant's intent in committing the acts charged where such intent is an issue in the case. See: Ann. 15 A.L.R.2d 1080. There is division in the authorities, however, as to just when such intent is so placed in issue as to become a proper subject of proof by evidence of such a character. See: Ann., supra, 15 A.L.R.2d, p. 1089. One line of authority holds that since criminal intent in every case is an essential ingredient of criminal abortion (especially under a statute such as ours), the state has an affirmative duty to prove such an intent; that evidence of other offenses may, therefore, be introduced as such proof upon the state's case in chief. See: Ann., supra, p. 1091. Another line of authority (to which a major portion of appellant's brief is devoted and exemplified by State v. Willson, 113 Ore. 450, 230 P. 810, 233 P. 259, 39 A.L.R. 88 and State v. Cragun, 85 Utah 149, 38 P.2d 1071), holds that such evidence is inadmissible unless and until absence of criminal intent is affirmatively asserted by the defendant. See: Ann., supra, p. 1089.

Defendant also points out that in no instance was it shown that the other abortion operations were not necessary to preservation of life. He contends that such evidence could not, in any event, therefore, bear upon the question of criminal intent since such intent was not established as to such operations.

In our view, however, the question of inadmissibility of this evidence upon any of the grounds asserted by defendant need not be decided in this case. In any event we should be compelled to hold that its admission was not prejudicial under sec. 11266, N.C.L.1929. That section provides: "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

Since the evidence of the offense with which defendant was charged went to the jury without contradiction or explanation by the defendant, there was no issue in the evidence upon which the testimony of other offenses might have swayed the jury. Nor, as we have discussed, was there any deficiency in proof of the offense charged. Further it is to be noted that there is no indication that the testimony of Juanita or of her corroborators for any reason was unworthy of belief by the jury. Not only does it remain uncontradicted. In no respect was it impeached; nor was it shaken by cross-examination. Yet, in effect what we are asked to conclude is that had it not been for the testimony relating to other offenses the jury might well have disbelieved every witness as to the offense charged. Not that it might have believed

witnesses to the contrary effect, but might simply have *disbelieved* the undisputed testimony of the state's witnesses for no apparent or asserted reason at all. We find ourselves wholly unable to accept such a proposition.

A similar contention was made in People v. Busby, 40 Cal.App.2d 193, 104 P.2d 531, 535, where the defendant had been indicted for child stealing and abduction and the child was the principal witness against him. Hearsay testimony was improperly admitted. The defendant contended that the testimony of the child might not have been believed by the jury had it not been for the fact that the inadmissible evidence reflected unfavorably upon his character. The court, relying upon a constitutional provision similar to our sec. 11266, stated: "In a close case there is little doubt that the admission of this evidence might be held to be reversible error, but in the instant case the evidence * * * is so uncontradicted and so overwhelming that if appellant had been pictured by the evidence as a paragon of virtue, the jury could have reached no other verdict. The admission of this evidence has not resulted in any miscarriage of justice and was not reversible error. * * *"

In People v. Dial, 28 Cal.App. 704, 153 P. 970, 972, the court agreed with the defendant that evidence of other offenses should not have been admitted. It held, however, that the error was not prejudicial, stating, "The accusation against defendant is established by the testimony of two witnesses who testify directly to the commission of the acts charged in the information. The record fails to show that these witnesses were impeached or contradicted in any particular. No evidence was offered by the defendant, except the testimony of one witness which was confined to one of these earlier transactions. The evidence left no room for doubt in the minds of the jurors. They were bound to find the defendant guilty and could not have done otherwise without violation of their oaths."

In State v. Skaug, 63 Nev. 59, 66, 161 P.2d 708, 711, 163 P.2d 130, it was stated by this court: "* * * in the

presence of such enormous and clearly proven guilt we will not pause to speculate as to whether, if evidence of other offenses had been omitted the jury might have returned a verdict carrying a lesser penalty. Section 11266 N.C.L. prevents a reversal."

This same principle has been applied in abortion cases. In People v. Northcott, 45 Cal.App. 706, 189 P. 704, 710, the Supreme Court of California under the constitutional provision to which we have referred, refused to review a decision of the district court of appeals as to the admissibility of testimony concerning other abortion operations performed by the defendant. The court's refusal was based upon language of the court of appeals that the "record * * * leaves no doubt of the guilt of the defendant." To the same effect is Thacker v. State, 55 Okla.Crim.App. 161, 26 P.2d 770.

If, then, upon completion of the state's case, excepting the testimony as to other abortion operations, "the nature and conclusiveness of the evidence" as to the offense charged were such that the jury could not in good conscience have found otherwise than that he was guilty (and we are satisfied that such is the case), the only logical conclusion is that the error, if any, was not prejudicial. State v. Skaug, supra.

State v. McKay, 63 Nev. 180, 187, 188, 165 P.2d 389, 167 P.2d 476, 479, dealt with the asserted error of requiring the defendant under charge of first-degree murder to appear before the jury throughout the trial in handcuffs. The defendant there contended that the sufficiency of the evidence "could not logically negative the idea that prejudice may have influenced the jurors, since there is no conceivable yardstick in the law to judge the degree of prejudice in the minds of the jurors." This court, speaking through Mr. Justice HORSEY, rejected this contention, refusing to recognize in the defendant any "fanciful right to play upon the sympathy or credulity of the jurors, and * * * to endeavor to have them depart from their sworn duty, and thereby defeat justice, and of which the handcuffing

may have rendered him less capable, \* \* \*." The opinion states, "The jurors having done no more than their sworn duty, it cannot be presumed in favor of appellant that if appellant had been free from handcuffs, they would have done less than their duty. \* \* \* The appellant, of course, had no right to have justice miscarry in his favor. No person has that right." That language, we feel, precisely expresses our position in the instant case.

Judgment and order are affirmed.

BADT, C. J., concurs.

EATHER, J., dissenting.

I dissent.

This case was originally assigned to the writer for the preparation of the opinion of the court. In view of the position taken by the majority of the court, I am herewith setting forth the original draft prepared and presenting it as the dissenting opinion, adding thereto such observations as I deem proper in view of the attitude of the prevailing opinion.

I think the judgment of conviction should be reversed, and that the defendant should have a new trial, for error in the admission of evidence, over appellant's objections, from six other women who testified that appellant had performed abortions upon them at times prior to the act specified in the indictment, and also in the admission of evidence of similar offenses which were not charged in the indictment. In my opinion the admission of such evidence was prejudicial to appellant and the error requires that the conviction be set aside and a new trial awarded.

Appellant was charged with the crime of abortion under sec. 10129, N.C.L., in that he used or caused to be used upon the body of a woman then pregnant, certain instruments, wilfully, unlawfully and feloniously, and with intent to produce a miscarriage, not necessary to preserve the life of the woman or the child. He pleaded

not guilty and offered no evidence at the trial. The state gave evidence that the operation was not necessary to save life, inasmuch as the prosecuting witness was in good health. The jury returned a verdict of guilty, which the trial judge refused to disturb.

At the trial, the state offered and the trial court accepted, over appellant's objections, evidence from six other women who testified that appellant had performed abortions upon them at times prior to the act specified in the indictment. In my opinion the admission of such evidence was prejudicial to appellant and the error requires that the conviction be set aside and a new trial awarded.

It is well settled that evidence that accused had committed another crime independent of and unconnected with the one for which he is on trial is inadmissible; State v. Skaug, 63 Nev. 59, 161 P.2d 708, 163 P.2d 130. There are some exceptions to the rule, and, in State v. McFarlin, 41 Nev. 486, 172 P. 371, we referred to People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193, where the court stated and discussed the exceptions. We said in that case that evidence of other crimes would be accepted only when it would tend to establish one of the following: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime.

There is no suggestion of mistake or accident in the present case, nor is there any question as to the identity of the person charged. Those two exceptions may now be laid aside. As there is evidence of the general good health of the prosecuting witness and, therefore, that the miscarriage was not necessary to save life and as there was testimony that appellant was paid for the operation, the motive seems to have been established and there was no need for resort to other crimes to prove

motive. To claim the aid of the fourth exception relating to a common plan or scheme, it is necessary to show that the other crimes bear such a close relation to the one charged in the indictment that proof of one tends to establish the others. The evidence offered against appellant concerning the other crimes clearly shows that each, if committed, was a separate and independent act. I see no common design or scheme. If a person bent on murder steals a gun or other weapon to accomplish his purpose, the scheme or design is apparent and proof of the stealing of the weapon is allowed at the trial for murder. The other abortions charged to appellant by the testimony admitted in this case have no relation to the crime laid in the indictment.

There remains the exception relating to intent. Appellant offered no testimony. By his plea he contended he was not guilty of the entire charge. If he had admitted doing the act and claimed, for example, that he believed it to have been necessary or that it was a mistake or an accident, evidence of other and similar acts might be admitted to show his intent to do an unlawful act. From the relevant evidence in this case, it seems quite apparent that if appellant performed an abortion upon the prosecuting witness he harbored a sufficient intent to come within the meaning of the statutory language. Where intent is thus shown in the mere doing of an act, it is unnecessary for the state to resort to evidence of other alleged crimes by the accused in order to establish intent. This principle is stated in State v. Cragun, 38 P.2d 1071, at pages 1077, 1078, 1079, as follows:

"Where the intent or guilty knowledge is a necessary conclusion from the act done, proof of other offenses of a similar character is inadmissible and violates the rule that the evidence must be confined to the issue. * * *

"Where the state is able to prove, as it did in the case at bar, the commission of the act and that its performance was not necessary to save the life of the woman, then the criminal intent of the defendant has been shown, and evidence of other abortions on other and

entirely different women is not relevant nor competent. If the defendant, although he had pleaded not guilty, claimed that the act was necessarily performed in an effort to save the life of the woman, then in *rebuttal* of such claim the state might well offer evidence of other abortions attempted or committed by the defendant for the purpose of disproving such claim and showing his intent in the performance of the acts for which he is being tried.

"Cases may arise where the state would be unable to prove the intent of the defendant without proving the commission, or attempted commission, by him on other women of separate and distinct offenses. Should such a case arise, then, for the purpose of proving a criminal intent, the state should be permitted to introduce such evidence on its main case, although a plea of not guilty had been entered by the defendant; but, where the state, as was the case here, can prove the intent without relying upon separate and distinct offenses committed by the defendant, it should do so.

"Evidence of the commission of separate and distinct offenses is an exception to the general rule, and its admission should be definitely limited to the cases in which it is relevant and material in order to safeguard the rights of a defendant. Jurors might often be inclined to convict a defendant, although he be innocent of the crime charged, were the state permitted to prove that he had committed other and distinct crimes than the one for which he was being tried. In limiting such evidence, as we have, we feel that we are protecting and safeguarding, not only the rights of the defendant, but the state as well.

"It necessarily follows that the admission of this evidence was error, and that a new trial should be granted. The judgment of the court below is therefore reversed, and the case remanded for a new trial."

In the Cragun case it was also said by Chief Justice Straup in his concurring opinion, 38 P.2d at pages 1084, 1085:

"Further, the chief reason why evidence of like offenses is inadmissible is that the introduction of it opens the door to collateral issues not embraced within the information and of which the accused is not apprised and hence unprepared to meet such issues; that to enter upon a trial of them may require as much or more time to try them as to try the charged offense, for surely, if the state is permitted to give evidence with respect to the commission of other like offenses, the accused may also give evidence in refutation thereof. One of the requirements and functions of an information is to distinctly and in ordinary and concise language set forth the offense upon which the accused is to be put on trial, and in such manner as to enable a person of common understanding to know what is intended, so as to enable the accused to prepare himself to meet the charged offense, and to limit and restrict evidence with respect thereto.

"I come now to the case of State v. McCurtain, 52 Utah, 63, 172 P. 481. There on a charge of a criminal abortion it was held that the testimony of a young woman that an abortion was committed on her by the accused *at or about the time* the operation was performed on the prosecutrix was properly admitted. Such evidence was held proper because of the claim there made by the accused that the miscarriage of the woman operated on in the charged offense was necessary to preserve her life. 'Much evidence,' said the court, 'both for and against the defendants, upon that proposition was adduced,' which as stated, 'constituted the chief issue of the case,' and hence 'the question of intent was therefore the most prominent feature of the case'; and that 'it has frequently been held in prosecutions of this character that for the purpose of proving that the operation was in fact criminal, and as showing the intent of the accused, the state may show that other similar operations were performed upon other pregnant women.'

"In saying that the court followed and quoted from cases holding that a felonious intent is an essential

ingredient of the crime charged and *the act done is claimed to have been accidental or by mistake,* it is proper to characterize the act by proof of other like acts producing the same result, as tending to show *guilty knowledge and the intent or purpose* with which the particular act was done and to rebut the presumption that it might otherwise obtain. But in most such cited cases, notably State v. Brown, 3 Boyce (Del.) 499, 85 A. 797, 800, it, however, is stated that, where 'from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration, or attempted perpetration, of other like offenses should not be admitted.' 1 C.J. Sec. 96, p. 329, is there also cited and quoted, that 'acts of defendant tending to show his knowledge of the woman's pregnancy and his intention to commit an abortion upon her may be proved whether they were prior or subsequent to the particular act charged in the indictment; hence evidence of other operations performed by defendant before or after the operation charged is admissible for the purpose of showing the intent with which the act charged was done.' But immediately following such language, and in the same section, the author further says that 'such evidence is competent only on the question of intent, and therefore is not admissible where the unlawful intent has been proved,' etc.

"Such is in accord with the recognized principle heretofore referred to that, where the nature of the offense is such that proof of its commission as charged carries with it an implication or presumption of criminal intent, evidence of the perpetration or attempted perpetration of other like offenses is inadmissible. *I recognize that some courts have not always been mindful of such distinction, said nothing about it, and seemingly without any reference thereto announced or stated that, where a felonious intent is an ingredient of the charged offense, evidence may be admitted of the commission by the*

*accused of other similar offenses, which, so broadly stated, generally is conceded may not be done.* * * *

"On the record I am convinced, and I think the record justifies the conclusion, that the complained of evidence, *under the guise of showing intent or guilty knowledge or motive or the absence of necessity, was introduced to show the commission of another like offense to indicate a probability of the commission by the accused of the charged offense, or to show a disposition to commit it.* As stated by Chief Justice Bigelow in Commonwealth v. Shepard, 1 Allen (Mass.) 575, *evidence of other criminal acts 'is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another.' I thus think prejudicial error was committed in admitting evidence of such claimed prior offenses."* (Emphasis supplied.)

In the above-cited case the defendant rested his case without evidence when the state rested.

The same thought was expressed in a case in Oregon where the court refused to allow evidence of other crimes. In State v. Willson, 113 Or. 450, 230 P. 810–811 (later opinion in 233 P. 259), the court said:

"One consequence of supporting the procedure allowed in this respect by the trial court would be that no defendant could know how many violations of the law he would be called upon to defend upon a single charge; * * * The statute contemplates the statement in the indictment of a single offense, and that the evidence shall be confined to that charge alone of which the defendant has been informed."

In that case, evidence was given by the prosecuting witness that the accused had twice previously attempted to destroy the fetus with which she was pregnant as a result of sexual intercourse in which she and the accused had engaged. However, the supreme court reversed a

conviction and held that the admission of such evidence of other alleged crimes was error. The opinion discusses the subject, the general rule and the exceptions at great length and refers to many other cases.

The very number of other alleged crimes offered at the trial of the case at bar proves the logic and fairness of the general rule and shows that exceptions should not be allowed to work an injustice upon accused. The indictment charged him with one crime, for which he should prepare his defense; but when he came to trial he found many others charged and of which he had neither previous notice nor opportunity to adequately prepare a defense.

The exception to the general rule against admitting evidence of other alleged crimes must be carefully guarded and not extended.

In State v. Willson, 233 P. 271, the court quoted from an early New York opinion as follows:

"The cases in which offenses other than those charged in the indictment may be proved, for the purpose of showing guilty knowledge or intent, are very few."

While the admission of the above evidence alone requires a reversal there is another reason which is equally fatal to the admission of other crimes alleged in this case. The law makes abortion a crime if it is not necessary to save life, and part of the state's burden is to prove that fact. If that be an essential ingredient, it seems only fair and, indeed, necessary that any other alleged crimes offered against an accused should contain that necessary ingredient. There is no evidence that any of the other alleged abortions, as testified to by others than the prosecuting witness, was not necessary to save life. For all we know from the record, they might not have been crimes.

In People v. Molineux, 61 N.E. 296, the court said:

"Let us suppose this to be a case in which evidence of felonious intent could properly be derived from proof of the commission by the defendant of other similar crimes. The supposition necessarily implies the establishment

of the extraneous crime by legal and competent evidence before it can be referred to in support of the theory that it proves the guilty intent with which the crime charged was committed."

In State v. Willson, 233 P. 259, 260, the court said: "* * * even if the testimony were admissible, the prosecution had no right to have its witness make the bald statement that there were two other miscarriages, without including in her testimony the other statutory elements of the crime, viz., intent to destroy the child, and want of necessity to preserve the mother's life."

The court there referred to a previously decided case involving forgery and quoted from it as follows:

"The prosecution assumed the same burden of proof as to each of the checks introduced to show guilty knowledge as in regard to the check for which he is being tried."

Professor Wigmore, in his work on evidence, 3d. Ed. Vol. 11, sec. 302, says:

"Yet, in order to satisfy this demand, it is at least necessary that prior acts be similar. * * * The essence of its probative effect is the likeness of the instances, * * * in short, there must be similarity in the various instances in order to give them probative value. * * *"

In People v. Gordon, 71 Cal.App.2d 606, 163 P.2d 110, 127, a case called to our attention by the state, the court said:

"The guiding rule in a situation like the one before us is that evidence of similar transactions is admissible to show guilty knowledge or intent so long as they 'contain the material elements of the main case.' "

See, also, People v. Rongetti, 338 Ill. 56, 170 N.E. 14.; People v. Darby, 64 Cal.App.2d 25, 148 P.2d 28; State v. Bassett, 26 N.M. 476, 194 P. 867; State v. Choate, 228 N.C. 491, 46 S.E.2d 476; State v. Hale, Mont., 249 P.2d 495.

In the absence of an admission by or a conviction of appellant concerning the other alleged abortions, I think

that, if admissible at all, the state was bound to show with respect to each the same elements as are necessary to secure a conviction under the indictment.

I agree with this further statement by the court in State v. Willson, 233 P. 271:

"The evidence of other offenses in this case only tend to blacken the character of the defendant. They are not admissible to show intent for that is completely and conclusively established by the act itself if the testimony introduced by the state is to be believed. It is contrary to the reason of the law to admit the objectionable testimony of other crimes. The defendant had a constitutional right to be informed of the nature of the charge against him, and to be held to answer only the crime named in the indictment. No defendant ought to be deprived of his liberty by hue and cry, or by the mob-mad yell of 'Crucify him!', but only upon an indictment constitutionally framed and proven by evidence of criminal acts, a connection between which 'must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish.' "

The state places reliance upon People v. Hickok, 56 Cal.App. 13, 204 P. 555, 557, where a conviction of illegal abortion was sustained although evidence was received that defendant committed two other illegal abortions. In that case, as in this, defendant did not testify. However, he presented a physician as a witness in his behalf who testified that the operation described by the witness for the prosecution, "might have been for a certain female ailment, in which event the instruments used and the sensations of pain described by the patient would have been the same as in the case of an operation to arrest pregnancy." The court treated that testimony as the presentation by defendant of an inferential defense that he had a lawful purpose in performing the operation, which might create a reasonable doubt in the minds of the jurors and the state had a right to show the other instances. Appellant here presented no witness in his behalf. We think the Hickock case is distinguishable.

The state calls our attention to the probable difficulty of securing convictions in cases like this unless evidence of other offenses is permitted. I cannot be unmindful of the right of a defendant to be tried for only the crime charged against him in the indictment. We fear that conditions have not changed much, if any, since the following expression was given by the court in State v. Saunders, 14 Ore. 300, 12 P. 441, 445:

"Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs, no matter what explanation of them he attempts to make, it will be more damaging evidence against him, and conduce more to his conviction, than direct testimony of his guilt in the particular case. Every lawyer who has had any particular experience in criminal trials knows this,—knows that juries are inclined to act from impulse, and to convict parties accused upon general principles. An ordinary juror is not liable to care about such a party's guilt or innocence in the particular case if they think him a scapegrace or vagabond. That is human nature. *The judge might demurely and dignifiedly tell them that they must disregard the evidence, except so far as it tended to impeach the testimony of the party; but what good would that do?"* (Emphasis supplied.)

The state also suggests that if there was error in the admission of evidence relating to the other abortions, it was harmless error because the relevant evidence was ample to enable the jury to render a guilty verdict and, therefore, we should consider this case as one within the provisions of sec. 11266, N.C.L., which forbids granting a new trial or setting aside a judgment unless, after an examination of the whole case, the error complained of has resulted in a miscarriage of justice or has actually prejudiced the defendant with respect to a substantial right. Upon an examination of this record I do not believe that the evidence of appellant's guilt is so overwhelming or convincing as to enable us as a matter of law to say that the evidence of the other

alleged crimes did not have a material influence upon the jury and had no bearing upon the verdict. I think this appellant had a right to be tried solely upon the charge laid in the indictment, free from any irrelevant matters which could and probably would inflame the minds of the jurors and create prejudice against him. It would be an unusual mind that would not be moved, at least to some extent, by a parade of witnesses who testified, as they did in this case, that appellant performed six abortions upon them, in addition to the one for which he is being tried.

In Crow v. State, 28 Ala.App. 319, 183 So. 897, 903, it is stated:

"The rule of law that testimony of distinct and disconnected crimes should not be admitted in criminal cases, is well grounded in principle and such evidence brought forward to bolster up another and distinct charge is so manifestly harmful and unfair as to call for a reversal of verdicts so obtained."

In Commonwealth v. Chalfa, 313 Pa. 175, 169 A. 564, 565, the court said:

"Logically, the fact that a person has committed one offense is not proof by itself that he has committed another. The effect, however, upon a mind receiving such information is not necessarily slight, for there is an emotional reaction against him who is shown to be guilty of another crime; in other words, the mind of the jury is prejudiced. Because of the nature and prejudicial character of such evidence, it is obvious that it should be received with the utmost caution."

On page 6 of respondent's answering brief it is stated in part as follows:

"The Nevada cases cited do not, however, seem to have raised the precise question as to whether or not the State can introduce evidence of other crimes in its case in chief where the evidence concerning the crime in question clearly shows the crime to have been committed.

"At the outset we will concede that there is a conflict

of authority on the question of whether or not the prosecution in an abortion case must wait until the defendant has denied the criminal intent before introducing evidence of other acts to show that the intent was a criminal one."

The prevailing opinion in this case, in my judgment, is based upon a mistaken conception of the law regarding the admission of evidence from the six other women who testified that appellant had performed abortions upon them at times prior to the act specified in the indictment. The prevailing opinion states in part as follows:

"Nothing can be clearer, in our view, than that Juanita's testimony was amply corroborated within the requirements of our statute; that the corroboration tended to connect the defendant with the offense; that the testimony of Juanita and of the doctor supplied evidence of instrumentation; that the court was not in error in refusing to direct a verdict for the defendant.

"The state did not choose to stand upon the testimony outlined, however. It proceeded to present testimony of six other women (one of whom was the witness present in the reception room with Juanita), all of whom testified to having made the Daly City contact with Golding and the trip to Reno and to receiving an abortion operation at the hands of defendant."

In respect to the above the writer of this dissenting opinion desires to call to the attention of my learned associates the statement contained in the case of State v. Cragun, supra, 38 P.2d, page 1078, as follows:

"Where the state is able to prove, as it did in the case at bar, the commission of the act and that its performance was not necessary to save the life of the woman, then the criminal intent of the defendant has been shown, *and evidence of other abortions on other and entirely different women is not relevant nor competent.* * * *"

In State v. Rodriquez, 31 Nev. 342, 347, 102 P. 863, 865, the court stated:

"[Prosecuting attorneys] have a duty to perform equally as sacred to the accused as to the state they are employed to represent, and that is to see that the accused has a fair and impartial trial guaranteed every person by our constitution, no matter how lowly he may be, or degrading the character of the offense charged. * * * *they should also see that nothing but competent evidence is submitted to the jury.*"

This case was cited with approval by this court in State v. Kassabian, 69 Nev. 146, 243 P.2d 264, which said case was reversed and remanded by this court as presently constituted.

Did the prosecuting attorney in the case at bar commit error in offering evidence of six other women as stated above? I am of the opinion that prejudicial error was committed.

Again in State v. Rodriquez, supra, 31 Nev., page 347, 102 P., 865, the court stated:

"It seems to be a peculiar trait and ambition of some prosecuting attorneys, carried away through misguided zeal, to *overprove* their case when a conviction is otherwise certain, and to exert their skill and ingenuity in seeing how far they can trespass on the verge of error, and, generally in so doing, trespass upon the rights of the accused, thus causing the necessity of courts of last resort to reverse causes and order new trials, to the expense and detriment of the commonwealth and all concerned."

In People v. Wolf, 183 N.Y. 464, 76 N.E. 592, 594, 596, the case went to the jury upon the state's evidence alone. There the court stated:

"An unfair trial, especially in a criminal case, is a reproach to the administration of justice and casts grave responsibility, not only upon the prosecuting officer, but also upon the trial judge. However strong the evidence

against the defendant may be, if she did not have a fair trial, as shown by the rulings of the court subject to . proper objections and exceptions, the judgment of conviction should be reversed and a new trial ordered, so that she may be tried according to law. \* \* \*

"\* \* \* The only excuse for the injustice, and we think it has as much force in this case as it can have in any, is that the defendant is apparently guilty of a horrible and detestable crime. But why should she be tried at all, unless she is tried fairly and in accordance with law? *If her guilt is so clear, why should unwarranted means be used to secure a conviction?* \* \* \*" (Emphasis supplied.)

In People v. Nuzzo, 294 N.Y. 227, 62 N.E.2d 47, 51, the court said:

"Thirty years ago this court had occasion to comment upon abuses on the part of prosecuting officers and carelessness on the part of trial courts in disregarding errors of major importance in the trial of criminal cases whenever the judge was satisfied that the defendant was guilty. We are prompted by our examination of records in this court disclosing many shocking instances of abuse on the part of prosecuting officers which we have been asked to ignore, to say again what was said in People v. Marendi, 213 N.Y. 600, 619–620, 107 N.E. 1058, 1064:

'Are we then to disregard errors no matter how substantial, if upon a review of the evidence we are satisfied with the verdict of the jury? Such a course would simply mean in the long run the abolishing of all forms of law taught by experience to be necessary to the protection of the innocent, and the decision of criminal cases on appeal solely on the facts. If trial by jury is to be maintained, the right of every accused person to be tried in accordance with established forms of law must be respected. If the errors in question had related to matters upon which but one decision, and that adverse to the defendant, could reasonably have been reached, it

might be permissible to overlook them; but where prejudicial matter is erroneously received in evidence on a disputed question of fact, its harmful character cannot be determined solely by the mere weight of competent evidence unless we are to resolve ourselves into a jury and, ignoring the finding upon incompetent evidence, substitute one upon the evidence which we may deem competent.' "

It is also stated in the prevailing opinion that the testimony of "Juanita or of her corroborators, remains uncontradicted. In no respect was it impeached; nor was it shaken by cross-examination."

In this respect I would like to state that every lawyer who has had any particular experience in criminal trials knows that to place a person on trial upon a criminal charge, and to allow the prosecution to show by him that he has before been implicated in similar affairs, no matter what explanation of them he attempts to make, it will be more damaging evidence against him, and conduce more to his conviction, than direct testimony of his guilt in the particular case. Unless therefore, a defendant in a criminal prosecution is as pure as the icicles which form on Diana's temple, he had better keep off the witness stand if the prosecution is at liberty to ransack his past life.

In this dissenting opinion I have in some detail attempted to show where the state is able to prove, as it did in the case at bar, the commission of the act and that its performance was not necessary to save the life of the woman, *that the criminal intent of the defendant has been shown and evidence of other abortions on other entirely different women is not relevant nor competent.*

In State v. Cragun, supra, 38 P.2d, p. 1082, the court stated as follows:

"* * * It is urged that evidence of such claimed prior offenses was admissible to show motive, or intent, or guilty knowledge of the accused as to the charged offense. Because in some cases evidence of a separate

and similar offense is admissible to show motive or scienter, or intent, the *fallacious conclusion is deduced that such evidence is admissible in all cases where a felonious intent is an essential element of the charged offense.* Of course a felonious intent, a criminal or evil purpose, is an essential element in the commission of most felonies. But that does not mean that evidence of a prior, separate, and similar offense may be given in all cases to show with what intent the specific charged offense was committed. *To contend that is to enlarge or increase or to disregard the exceptions to the general rule excluding such evidence.* \* \* \*"

In State v. Hall, 249 P.2d 769, 772 (Nov. 6, 1952, Washington), the court said:

"We agree with appellant that as a general rule evidence of the commission of a crime other than the one with which a defendant is charged is not admissible, and if violated a new trial must be granted. To this rule there are many exceptions. \* \* \* There appears to be no difference of opinion about the rule and such exceptions, *but the courts find difficulty and often seemingly disagree upon their application.*" (Emphasis added.)

In the face of the record presented in this case, I am unable to close my eyes to the facts, and I think the record justifies the conclusion, that the complained of evidence, under the guise of showing intent or guilty knowledge or motive or the absence of necessity, was introduced to show the commission of other like offenses to indicate a probability of the commission by the accused of the charged offense, or to show a disposition to commit it. The general rule that the commission of a separate crime cannot be proven in support of the one named in the indictment is still in existence. The exceptions to this rule have not as yet superseded the time honored precept of the law. On the contrary, as said in Underhill's work on Criminal Evidence, sec. 87, cited with approval by Mr. Justice Moore in State v. O'Donnell, 36 Ore. 222, 61 P. 892, 893:

"These exceptions are carefully limited and guarded by the courts, and their number should not be increased."

In this dissenting opinion I have in some detail attempted to show just what the law is in my opinion in the case at bar; perhaps the opinion will be criticized as being repetitious, however, in order to make the opinion clear as to the law as I see it, it has been necessary to emphasize by repetition and I trust that the opinion will not be considered in the same light as "an extemporaneous speech, only worth the paper it is written upon."

It necessarily follows that the admission of the evidence of other crimes as outlined in this opinion was error and that a new trial should be granted.

## ON PETITION FOR REHEARING

March 11, 1953.

**Rehearing denied.**

(EATHER, C. J., dissenting.)